## Bower *versus* Hastings *et al.*

36   285<br>174   548<br>174   551

It is a good defence to an action by an endorseé against the maker of a promissory note, that it was made for the accommodation of the payee, without consideration, and negotiated by him, when over due.

ERROR to the Common Pleas of *Tioga county*.

This was an action of *assumpsit* by H. S. Hastings and George McNitt against John Bower, as endorsees of a promissory note, of which the following is a copy :—

" $1500.        White Deer Valley, November 11, 1852.

" Ninety days from date I promise to pay to the order of S. T. McCormick, at the Bank of Danville, fifteen hundred dollars, without defalcation, for value received.

                            · " JOHN BOWER.

" Credit the drawer, S. T. McCORMICK.

           Endorsed, " S. T. McCORMICK."

On the trial, the defendant proved by a witness, that he had seen this note, in the fall of 1855, in the possession of S. T. McCormick, the payee; that McCormick offered it to the witness in payment of a debt of $500. Another witness testified, that in the latter part of 1856, Hastings told him he had taken the note of McCormick in the spring of 1856; that he " got it in a dicker ;" that he thought it strange McCormick should hold this note against Bower, while Bower was pushing him on ·judgments and selling his property, and that if he (Hastings) could not recover it of Bower, McCormick would " make it right to him."

The defendant then offered in evidence the following receipt, having first proved the body, signature, and endorsement to be in the handwriting of McCormick :—

" Received, November 11, 1852, of John Bower, a note for fifteen hundred dollars, payable at the Bank of Danville, which note is to be paid by me.

                          " S. T. McCORMICK."

The court below ruled out this evidence; to which the defendant excepted. The defendant again offered this receipt in evidence, to be followed by proof of its existence in the hands of the defendant, previous to any transfer of the note by McCormick to the plaintiffs. The court again rejected the evidence, and the defendant excepted.

[*Bower v.* Hastings *et al.*]

The defendant then offered in evidence the records of the Common Pleas of Tioga county, showing a large indebtedness on the part of McCormick to Bower, executions thereon in 1855, the sale of McCormick's property to Bower, and proof that the plaintiff was present at that sale. This evidence was objected to by plaintiff, rejected by the court, and the defendant excepted.

The court below (WHITE, P. J.) instructed the jury to find a verdict for the plaintiffs, for the amount of the note and interest. A verdict was accordingly rendered for the plaintiffs for $2071.50, and judgment having been entered thereon, the defendant sued out this writ, and here assigned for error the rejection of the evidence offered on the trial.

*Bache* and *Lowrey & Wilson,* for the plaintiffs in error, cited Hughes *v.* Large, 2 *Barr* 103; Snyder *v.* Riley, 6 *Id.* 164; Tams *v.* Way, 1 *Harris* 222; Lancaster Bank *v.* Woodward, 6 *Id.* 357; *Chitty on Bills* 243-5; Appleton *v.* Donaldson, 3 *Barr* 381.

*Williams* and *Ryan & Sherwood,* for the defendants in error.— There is little dispute about the facts of this case. Bower gave his note to McCormick, which he alleges was given for his (McCormick's) accommodation. This note came into the hands of Hastings & McNitt, the plaintiffs below, for a valuable consideration, but, according to the evidence, after it was due. There is no imputation of fraud or unfairness on part of the plaintiffs below, nor any pretence that they were in any way privy to any fraudulent purpose on the part of McCormick. These facts raise the real question in the case, viz: Is the mere circumstance that a note is an accommodation note, a defence against a holder for value?

In Charles *v.* Marsden, 1 *Taunt.* 224, the point is expressly ruled, and that case is sustained in subsequent cases, where it is said that "a drawee who accepts to accommodate drawer, does not limit such acceptance to any particular time; and by suffering it to remain in the drawer's hands, authorizes him to make use of it at any time till he rescinds the authority, and consequently that he cannot refuse to pay a holder for value on the ground that it had been transferred after it was payable:" Bosanquet *v.* Dudman, 1 *Stark. Rep.* 1; Attwood *v.* Crowdie, *Id.* 483; Watkins *v.* Maule, 2 *Jac. & Walk.* 243.

In Pennsylvania, an accommodation maker is not regarded as a surety for the payee, for it is said, that "if the holder of a note, knowing it to be an accommodation note, gives time to the endorser, it is no discharge to the maker:" 12 *S. & R.* 382. See also, 2 *Blackf.* 187; Lewis *v.* Hanchman, 2 *Barr* 416.

There is no restriction upon its use, for it has been held, that "the holder of an accommodation note may sell, discount, or pledge it for an antecedent debt" (3 *Barr* 381), and that "the

[Bower *v.* Hastings *et al.*]

maker of an accommodation note cannot set up failure of consideration against it in hands of third person, though it be there merely as collateral security. That accommodation paper is a loan of the maker's credit without restriction as to the manner of its use:" Lord *v.* The Ocean Bank, 8 *Harris* 386; White *v.* Hopkins, 3 *W. & S.* 99. These cases establish the proposition that one who makes his note to accommodate his friend, makes it for a good and sufficient consideration, which, from the nature of the case, cannot fail: Gray's Administrators *v.* The Bank of Kentucky, 5 *Casey* 365; Moore *v.* Baird, 6 *Id.* 138; Brown *v.* Mott, 7 *Johns.* 361; Grant *v.* Ellicott, 7 *Wend.* 227; 2 *Peters* 183; 7 *Mass.* 452.

The opinion of the court was delivered by

READ, J.—This was a suit brought on the 29th April 1856, by the defendants in error against the plaintiff in error, on a promissory note in these words:—

"$1500. White Deer Valley, November 11, 1852. Ninety days from date, I promise to pay to the order of S. T. McCormick, at the Bank of Danville, fifteen hundred dollars, without defalcation, for value received.

"JOHN BOWER.

"Credit the drawer, S. T. McCORMICK.
    Endorsed, "S. T. McCORMICK."

The plaintiffs proved the note and rested.

The defendant then proved by a witness that he had seen the note in the possession of McCormick, in the fall of 1855, who offered to witness, to turn out the note in payment of a debt due him for sawing, amounting in the neighbourhood of $500. The defendant also proved by W. C. Lawson, Esq., a conversation he had with Mr. Hastings, in the summer or fall of 1856, in relation to this suit, in which the witness told him Mr. Bower had a full defence to the note; that it had been given to McCormick as a mere accommodation, and he was to pay the note. Witness said to him, he ought to have seen Bower before taking the paper; he said he thought it was strange McCormick should have held a note of the kind against Mr. Bower, while Bower & Gosh were pushing him on judgments they had against him, and selling his farm and other real estate he had in Lycoming county; said, when McCormick showed him the note at first, he thought it was strange he should have held it in that way; said, he had got it in the spring of 1856. Witness asked him, whether he had paid for it any amount; said he got it in a dicker, but did not state what he had given; when I said to him it could not be recovered, he said McCormick would make it right to him. Mr. Bower lives in

Lycoming, about thirteen miles from Milton, and about ten miles to where he lived in 1855, having moved about 1857.

The defendant then offered in evidence the following receipt, having first proved the body and signature and endorsement to be in the handwriting of McCormick :—

"Received, November 11, 1852, of John Bower a note for fifteen hundred dollars, payable at The Bank of Danville, which note is to be paid by me.                S. T. McCORMICK."
     Endorsed, " Receipt of S. T. McCORMICK."

This evidence was rejected by the court, and excepted to by the defendant.  The defendant then offered the receipt and endorsement, to be followed by other evidence, showing that the note in suit was given for the accommodation of S. T. McCormick, and that the defendant received no consideration therefor, and that the receipt was given by McCormick to the defendant at the time it purports to have been made.  This was also rejected by the court, and excepted to by the defendant.  The defendant then offered the record of certain judgments in Tioga county against McCormick in favour of Bower, execution and sale of his property March 21st 1855, for $3800, and also to prove that the plaintiff in this suit was present at this sale.  This also was rejected by the court, and excepted to by the defendant; and these several rulings of the court are now assigned for error.

In the case of Tinson *v.* Francis, 1 *Campb.* 19, which was the case of an accommodation note endorsed after it was due, Lord ELLENBOROUGH said : "After a bill or note is due, it comes disgraced to the endorsee, and it is his duty to make inquiries concerning it.  If he takes it, though he gives a full consideration for it, he takes it on the credit of the endorser and subject to all the equities with which it may be encumbered."  In the 8th edition of *Chitty on Bills* (published in England in 1833), p. 244, and in the 9th edition of the same book by *Chitty & Hulme* (in 1840), pp. 217, 218, this case is considered as sound law, and the doctrine is stated in these words : "In other words, the rule is, that a person who takes a bill or note *after it is due*, takes it subject to all objections in respect of want of consideration, or illegality, and all other objections and equities affecting the instrument *itself*, and to which it was liable in the hands of the person from whom he takes it."

In McKinney *v.* Crawford, 8 *S. & R.* 356, Judge DUNCAN said : "If a note is overdue when endorsed, the endorser takes it subject to the same defence as if it remained in the hands of the payee.  The reason is, because by the note not being paid, he has notice to put him on inquiry why it has not been paid."  And in Barnet *v.* Offerman, 7 *Watts* 130, a nearly identical case, as to

[Bower *v.* Hastings *et al.*]

its principal features, with the present, Judge HUSTON approved of the case of Tinson *v.* Francis, and disapproved of Charles *v.* Marsden, 1 *Taunt.* 244, which was certainly doubted in those editions of *Chitty* and in the 5th edition of *Bayley on Bills.* In Snyder *v.* Riley, 6 *Barr* 164, Chief Justice GIBSON, in 1847, cites Tonson *v.* Francis with entire approbation, and says: "It has been for some time settled, though it was at one time more than doubted, that an endorser of overdue paper takes it exclusively on the credit of the endorser, and subject, even without proof of *mala fides*, to all intrinsic considerations that would affect it between the original parties." In Tams *v.* Way, 1 *Harris* 222, this case of Snyder *v.* Riley is said to have been deliberately considered; and in The Lancaster Bank *v.* Woodward, 6 *Harris* 361, Judge WOODWARD adopts the very language of the late Chief Justice GIBSON already quoted from Snyder *v.* Riley. This has been undoubtedly the settled law of this state, as evidenced by an unbroken series of decisions, for nearly forty years. So, clearly it was also the law of England, although some modern authorities, beginning with Charles *v.* Marsden, may appear to have changed it.

In the last edition of *Byles on Bills*, published in January 1857, and before the learned Serjeant's elevation to the bench, page 143, he states the rule as laid down by Lord ELLENBOROUGH and the older text writers, and then says, "It now seems, that the original absence of consideration in the case of *accommodation* acceptances, the object of which is to raise money, will not defeat the title of an endorsee for value of an overdue bill or note, even although the endorsee had notice of the fact when he took the bill, unless there was an agreement, express or implied, restraining the negotiation of the bill or note, after it should become due;" and then, in a note, adds, "some inclination to reconsider the modern rule, seems, however, to have been evinced by the Exchequer Chamber, in Jewell *v.* Parr, 16 *C. B.* 684." This case was heard before eight judges, and decided on the 15th June 1855, and the syllabus is: "It is a good defence to an action by endorsee against the acceptor of a bill of exchange that it was accepted for the accommodation of the drawer without consideration, and that it was endorsed over by the drawer after it had been paid by him at maturity." On the argument, CROMPTON, J., said, p. 706: "It would be very unreasonable to hold that an accommodation bill may be kept out for an indefinite length of time, and circulated and paid over and over again." POLLOCK, C. B., says, p. 708: "The fact of a bill being overdue, calls for inquiry on the part of him who takes it;" and then quotes what BULLER, J., said in Brown *v.* Davies, 3 *T. R.* 80, and adds himself: "In fact it is a disgraced bill; anybody may take it from the holder, but he takes only the right the holder had." POLLOCK,

VOL. XII.—19

C. B., says, p. 710: "It is impossible to reconcile all the *dicta* upon this subject. As to all the world except the drawer and acceptor, no doubt, the acceptance is to be taken to be an acceptance for value; but the question is, whether there is not a difference where the bill is endorsed over by the drawer after it has become due." ALDERSON, B., delivering the opinion of the court, said: "The court are unanimously of opinion in this case (and after some little doubt, at first entertained by one of its members) that there should be a *venire de novo*. The case mainly relied upon for the defendant in error was that of Charles *v.* Marsden, 1 *Taunt.* 224, where it was held, that it is not a defence to an action by the endorsee of a bill of exchange, to plead that it was accepted for the accommodation of the drawer without consideration, and was endorsed over after it became due. But in that case the question arose upon the pleadings; whereas here it is presented on the evidence. And we think, under the circumstances stated in this bill of exceptions, there was evidence for the jury of an engagement on the part of Allen not to negotiate the bill mentioned in the second count, after it became due; therefore, without going further into the case, it is enough to say, that there must be a *venire de novo*."

In Pooley *v.* Harradine, 7 *Ellis & Bl.* 430, decided on 24th February 1857, on a plea on equitable grounds, where the defendant made the notes jointly with J. for J.'s accommodation and as surety for J., which was known to the plaintiff who, without defendant's consent, gave time to J., it was held, that an equity arose from the relation of surety and principal between defendant and J., and notice thereof to plaintiff at the time he took the note, and therefore that the plea was good. COLERIDGE, J., in delivering the opinion of the court, said (the case having occurred since the passage of the Common Law Procedure Act, 1854): "As we are, however, called upon to deal with this case as if we were sitting in a court of equity, we think that we ought to decide it according to what we believe the doctrine in courts of equity." He had previously examined and commented on the cases of Hollier *v.* Eyre, 9 *Cl. & Fin.* 1, 45, in the House of Lords, and of Davies *v.* Stainbanks, 6 *De G. M. & G.* 679, before the Lords Justices, and adopted the principles with regard to principal and surety there laid down, and he considered it immaterial whether the relation of surety appeared on the face of the instrument or not, and referred with approbation to Laxton *v.* Peat, 2 *Campb.* 185, decided by Lord ELLENBOROUGH.

In the Mutual Loan Fund Association, 5 *Jurist* (*N. S.*) 338, decided by the Court of Common Pleas on the 5th November 1858, it was held a good and equitable defence, for the defendant to set up that he signed the promissory note as surety merely, to the knowledge of the plaintiff, and that goods of the principal

[Bower v. Hastings et al.]

debtor, of which the plaintiff held a bill of sale for the same debt, which if properly sold, would have sufficed to satisfy the whole claim of the plaintiff; yet that, by his negligence and misconduct at the sale, a loss was occasioned; and that it was not material for this purpose that the fact of the suretyship did not appear on the face of the instrument itself. The case in 7 *Ellis & Bl.* is referred to, and BYLES, J., said: "At law, as between a creditor and two joint makers, or joint and several makers, of a promissory note, both are principals; and evidence is inadmissible to show either to be a surety except, between joint debtors, for contribution; but in equity you may always show that one is a surety."

In Holmes v. Kidd, 3 *H. & N.* 891, decided in the Exchequer Chamber on the 1st December 1858, ERLE, J., said: "On the drawing of the bill there was an agreement that the canvas should be a security in the hands of the drawer, and, if sold, the proceeds should be applied in payment of the bill, if not paid by the defendant when due. The drawer held the bill till it was overdue, when he endorsed it without value to the plaintiff, and afterwards sold the canvas, and held the proceeds to be applied to the payment of the bill." "The plaintiff took the bill subject to the equities affecting it." WILLIAMS, J., said: "I agree that when it is said an endorsee takes subject to equities, the equities must arise out of the original transaction." CROWDER, J., said: "The case is within the ordinary rule applying to parties taking a bill by endorsement subject to equities which affect it."

Pooley v. Harradine is approved in Taylor v. Burgess, 29 *Law J. R.* (*Exch.*) 7, decided 3d November 1859, in which WATSON, B., cited Tudor's Leading Cases in Equity under the title "Principal and Surety," in discharge of surety, as laying down the equitable doctrine (and to which the American Editor has added a very instructive note); and finally confirmed in the Exchequer Chamber on the 15th June 1860, in Greenough v. McClelland, 2 *Law T. Rep.* (*N. S.*) 571.

It is therefore clear that Charles v. Marsden and its kindred cases are no longer authority in England, and that upon the point involved in the case now before us, the rule in that country is the same as our own.

The same state of affairs in both countries has produced, and will probably continue to produce, an indisposition to encourage the manufacture and circulation of mere accommodation paper. This was felt in Philadelphia nearly forty years ago, when three of the strongest banks of the present day were almost overwhelmed and nearly ruined by the discount of large amounts for persons whose capitals consisted almost entirely of bank accommodation. In 1857, the same system prevailed in this country to a very large extent; and one institution was mainly destroyed by

[Bower *v.* Hastings *et al.*]

a similar practice.  In England, the failure of numerous joint-stock and private banks, and of large commercial, mining, and manufacturing concerns, proceeding from the same causes, has determined the capitalists and men of business to set their faces against the whole rotten system of accommodation bills and notes. The courts always follow such necessities, and old sound rules of law are generally restored or revived by the exigencies of the times.

The evidence offered to be given and rejected by the court and contained in the first and second bills of exception was clearly admissible, for it proved an equity arising out of the original transaction.  It was a disgraced bill, and the plaintiff, in taking it, took only the right which McCormick had, and he never could have recovered against the defendants.

The note on its face was a "credit the drawer" note, apparently intended to be discounted for the use of the maker.  Three years after it is due, it is taken by the plaintiff from the endorser in a dicker, the plaintiff thinking it strange he should have held a note of the kind while Bower & Gosh were pushing him on judgments they had against him, and selling his farm and other real estate he had in Lycoming county.  It was therefore not only a disgraced bill, but, from the evidence, taken under circumstances of grave suspicion, and it seems probable, without any very real value being given for it.  It is clear, however, that under no state of the matter could the holder recover more than what he actually gave for it, and upon proper notice from the defendant to prove consideration, the truth would undoubtedly have been reached to the satisfaction of the jury.

We think also that the evidence in the third bill of exceptions should have been received.  The court on a future trial must adopt the law as stated in Tinson *v.* Francis, and in all the Pennsylvania cases on the same point, which this court recognises as the true rule.

Judgment reversed, and a *venire de novo* awarded.