# CHARLESTOWN.

## STORRS *v.* FEICK.

Submitted June 23, 1884—Decided September 27, 1884.

1. Title to land gives to the owner constructive possession of it so as to enable him to maintain trespass, unless there is an adverse possession or right in some other person by contract or operation of law to the exclusion of the owner. But the adverse possession that will prevent such action by the owner, must be such as entirely takes away the constructive possession from the owner and not the intrusion of a mere wrong-doer. It must be such a possession as will constitute a disseizin of the owner. (p. 608.)

2. It is error for the court, in giving instructions to the jury, to single out certain facts and instruct them that, if they are true, they must find for either party in accordance with such facts, when there are other facts in the case bearing on the subject tending to establish a different conclusion. (p. 613.)

The facts of the case appear in the opinion of the Court.

*Cole & Miller* for plaintiff in error.

*C. D. Merrick* for defendant in error.

SNYDER, JUDGE:

Trespass on the case brought in June, 1880, by Cornelia Storrs and Richard Storrs, her husband, in the circuit court of Wood county against Adam Feick and Fritz Nelly to recover damages for cutting and removing timber from the land of the female plaintiff. Issues were joined on the pleas of not guilty and *liberum tenementum* and a trial by jury had thereon resulting in a verdict of one hundred and eighty dollars for the plaintiffs. The defendants moved the court to set aside the verdict and grant them a new trial for the reason that the court improperly gave to the jury certain instructions and refused to give others prayed for by the defendants. The court overruled said motion, and on April 26, 1882, rendered judgment upon the verdict for the plaintiffs, and the defendants excepted and brought this writ of error.

It appears from the bill of exceptions that Joseph Sims obtained from the commonwealth of Virginia a grant, dated February 20, 1786, for four thousand acres of land lying then in Harrison county but now in Wood and Ritchie counties; that the legal title to this land after several mesne conveyances was vested in the female plaintiff by deed dated May 6, 1868, duly recorded in Ritchie county; that J. N. Camden being the owner of a tract of two hundred and four acres of land in Wood county adjoining said four thousand acres, conveyed the same to the defendant, Feick, by deed dated January 4, 1878, and duly recorded in Wood county; that the grant for the two hundred and four acres is junior to that for the four thousand acres, and that the line between these two tracts when properly located by the calls is the common line of both tracts; that prior to the year 1878 there had been no actual possession of either of said tracts of land, but in 1878 the defendant entered upon the two hundred and four acres under his deed and soon thereafter cleared and fenced thereon some sixteen or eighteen acres, but only about eight or ten rods of said improvement extended over the line claimed by the plaintiffs, and that said defendant had cut and hauled timber from other portions of the land claimed by the plaintiffs; that the defendant, Nelly, was the proprietor of a saw-mill which he had employed the defendant, Feick, to conduct on the shares in Nelly's name, and that the timber

for which this action was brought was cut by Feick, taken to said mill and sawed and the lumber therefrom sold by Nelly. After the jury had heard the foregoing and other evidence, the defendants moved the court to give the jury three instructions which it is unnecessary to state in full, but the purport and effect of which are as follows:

If the jury believe from the evidence that at the time of committing the alleged trespass in the plaintiffs' declaration mentioned, the plaintiffs were not in the *actual* possession of the tract of four thousand acres, and that at that time the defendant, Feick, was in the actual possession of the land in controversy claiming it under color of title, then the plaintiffs are not entitled to recover in this action.

The court sustained the objection of the plaintiffs to said instructions and in lieu thereof gave to the jury the following:

" The plaintiffs in order to maintain their action must prove that at the time the alleged trespass was committed, they were either in the actual or *constructive* possession of the land on which the same was committed."

The plaintiffs in error claim that the circuit court erred in refusing their said instructions and in giving the instruction it did in lieu thereof. In view of the special facts in this case it seems to me the error here complained of presents but a single legal enquiry: Can the owner of land having only the constructive possession maintain trespass against a person in the actual possession but having no title to the land or right to the possession?

In order to maintain the action of trespass the plaintiff must prove possession actual or constructive of the land or a part of it, under a deed for the whole; or if the land is unoccupied he must prove that he has title to it—*Smith* v. *Wilson*, 1 Dev. & Batt. 40; *Gillison* v. *Charleston*, 16 W. Va. 282.

Where a disseizor takes possession and excludes the disseizee entirely therefrom, the former can alone recover for a direct injury to the land; but the disseizee may before his re-entry maintain trespass against the disseizor for disseizin itself—3 Bla. Com. 210; *Cooke* v. *Thornton*, 6 Leigh 8, 17.

There is, however, a difference between a disseizin and a trespass. A disseizin cannot take place except by the actual and exclusive possession of the disseizor; but if a person

enters upon a part of a tract of land without authority from the owner and without color of title to the whole or the part so entered upon, he will be a trespasser and not a disseizor and trespass may be maintained against him by the owner—*Crowell* v. *Beebe*, 10 Vt. 33.

Title to land gives to the person who has it constructive possession so as to enable him to maintain trespass, unless there is an adverse possession or right in some one by contract or operation of law to the exclusion of the owner; though formerly, a right of property and a mere right of entry were not enough for this purpose, but the party must have had actual possession—*Stearns* v. *Palmer*, 10 Metc. 32; 6 Wait's Ac. & Def. 65 and cases cited.

In *Snider* v. *Meyer*, Judge Berkshire, in delivering the opinion of the Court says: "However it may have been formerly doubted, it has been long and well established, that trespass to real estate may be maintained upon *constructive* as well as actual possession, and that a party having the title and right of possession, in the absence of any adverse possession, by legal intendment, has such constructive possession in law and may maintain trespass for an injury done to such real estate." 3 W. Va. 198.

The adverse possession here spoken of does not mean the mere invasion of a wrong-doer, but the actual, exclusive and continuous possession of one under a *bona fide* claim of title. It is certainly not pretended that a trespasser, by the mere act of trespassing upon the lands of the owner, can immediately and against the will of the owner, obtain such a possession as will prevent the owner from maintaining trespass. If such were the law, the trespass itself if continuous would bar the right of the owner to maintain his action—2 Rob. (new) Pr. 636. It is certainly true, that a person who enters upon land without any color of title, will be held to be in possession of no more than he actually occupies—*Kincheloe* v. *Tracewells*, 11 Gratt. 587. And even in such case in order to protect himself in the action of trespass, he must show that he had a prior possession of the exact places in which the alleged trespass was committed. The act constituting the trespass can not also be the act which disseizes the rightful possessor—*Moore* v. *Campbell*, 15 N. H. 208.

In the case before us the pleas of the defendants are not guilty and *liberum tenementum*. By not guilty the defendants admit the plaintiffs' possession as well as the right to the possession, but deny that they did the acts constituting the alleged trespass—Addison on Torts, § 424. And by *liberum tenementum* they admit that the plaintiffs are in possession, and that they are themselves *prima facie* wrong-doers; but they undertake to show title in themselves which shall do away with the presumption arising from the plaintiffs' possession—*Brest* v. *Lever*, 7 M. & W. 590; 6 Rob. Pr. 784.

Therefore, it seems to me, in any aspect of this particular case, the court properly rejected the instructions of the defendants and that it did not err in giving the instruction it did in lieu thereof.

The court at the request of the plaintiffs gave to the jury four other instructions, to the giving of which the defendants objected and excepted, and they assign this action of the court as error.

As the facts or evidence upon which these instructions are predicated, the bill of exceptions, which states expressly that evidence other than that certified was heard by the jury, gives the following: "It was also proven that the point indicated on the plat of Surveyor Farrow in the cause by the letter B, is the south corner of the four thousand acre tract where a pine stump formerly stood, but which is now gone, and claimed by the plaintiffs to be the four thousand acres of land covered by their title paper aforesaid. It was also proven that from the said point at B, at bearing of N. forty-two and one half degrees W. to the point C, there is a well marked line, the marking being sixty-three years old at the time of the execution of the order of survey in this case in the year 1881, as was ascertained by the said surveyor's blocking several of the trees on said line and counting the annulations thereof, and that on said line, at a point seventy-eight poles from C, a tree was found marked as a line tree, which being blocked, the annulations thereof counted ninety-seven years since the marking. It was also proven that at the point C there was no white oak as called for in the original survey, but that there were pointers marked apparently about sixty-three years ago; and it was proven by

John S. McGuire that in 1847 he went with surveyor Daniel C. Lovett, then the county surveyor of Wood county, run out the lines of lot number twenty-seven, now claimed by the plaintiffs, and that they went to the point C, and they found standing at that time at C a white oak marked as a corner, and that Lovett (now dead) then said on the ground that said white oak at C was the corner of said lot number twenty-seven; that there are now near the pointers at C, lying on the ground and nearly rotted away, the remains of two white oaks; that at a point seven or eight rods from C., in the line running toward D, there was formerly standing a tree marked fore and aft, and which in 1871 was standing and was blocked by said surveyor J. S. A. Farrow, and at that time counted eighty-seven years since the marking thereof.   It was also proven that from the point B at a bearing of N. forty-nine degrees W. to the point D, there is also a well marked line upon which the said surveyor at the time of executing the order of survey in this case blocked a number of trees and found the marking of said trees to be eighty-three years old, and that at about one hundred poles from B, in the said line, there was found a white oak at the time of executing said order of survey, which appeared to have been twice marked as a fore and aft tree in said line, the younger of said marks counting back sixty-three years and the older ninety-five years, and according to the evidence of surveyor Schubert, a witness for defendant, the older counted back ninety-seven years, but surveyors Farrow, Douglass and Stout said it counted but ninety-five years.   The line from B to D is known as the Triplett line.   It was also proven that the maple at the point A on said tract is supposed to be a corner of what is known as lot ten of Worth's survey, and is supposed to be in the line of said lot number twenty-seven of said Worth's surveys as aforementioned."

It was also proved, " that in the title-papers of said Feick, the southwest line of the plaintiffs' four thousand acre tract is called for as the northwest line of the land claimed by Feick under his deed from Camden, and that the southwest line of said lot number twenty-seven when located would be the line of said Feick's land."

I do not deem it necessary to give each of said four in-

structions, as they are all of the same character. The second, which I regard as, perhaps, the least objectionable, is as follows:

"2d. In ascertaining the boundaries of a tract of land described in a grant or deed, natural boundaries or lines of marked trees will be established in preference to mere course and distance, and where there are no natural boundaries and lines of marked trees are to be relied on to establish such boundaries, that line corresponding more nearly to the courses and distances called for in the grant or deed containing marked trees, which, upon being blocked and counted, the annulations on said blocks correspond more nearly to the survey upon which the grant issued or on which the deed was made, will be taken and held to be the true boundary line. If the jury therefore believes from the evidence that the pine stump marked B on the plat of surveyor Farrow, given in evidence in this cause, is a corner of the survey under which plaintiffs claim title, and if they further believe from the evidence, that running the course and distance as laid down on said plat and survey to the point C on said map, there was a marked line, and said marked line contained one or more marked trees which were blocked, the annulations of which trees, as appears from said blocks, correspond with the survey upon which the grant issued under which the plaintiffs claim, the jury must find the line BC to be the true boundary line of plaintiffs' land, unless the jury believe from the evidence that the line from B to D was the true line, as claimed by the defendants, actually run and marked as such true line at the time of making said survey."

It is presumed that this and the other instructions, just referred to, were intended to be in conformity with the doctrine announced in *Dogan* v. *Leekright*, 4 H. & M. 125, and the instruction given in that case on pages 137–8; but I do not think that intention was carried out to such an extent as to relieve these instructions from the objection that they invade the province of the jury. The courts of Virginia and this State have always been peculiarly jealous of any encroachment by the court upon the province of the jury, and it has been uniformly held in these States to be error for the court in the trial of a case to intimate to the jury any opinion

in reference to matters of fact which might in any degree influence the verdict. And when the evidence is *parol*, any opinion as to the *weight*, *effect* or sufficiency of the evidence submitted to the jury, any assumption of a fact as found, or even an intimation that written evidence states matters which it does not state, will be an invasion of the province of the jury—*McDowell's Ex'ors* v. *Crawford*, 11 Gratt. 405; *State* v. *Thompson*, 21 W. Va. 741.

It has been repeatedly held that it is improper for the court, in instructing a jury, to single out certain facts and instruct the jury, that if they are true, they must find for either of the parties in accordance with such facts, when there are other facts or evidence in the case bearing on the subject—*McMechen* v. *McMechen*, 17 W. Va. 684; *Dogan* v. *Leekright*, 4 H. & M. 125; *Berry* v. *Ensel*, 2 Gratt. 333; *Dyerle* v. *Stair*, 28 *Id.* 800.

It is apparent from the evidence certified in this case that the whole question involved in these instructions was the location of the boundary line of lot number twenty-seven which is the tract of four thousand acres of land claimed by the plaintiffs on the side next to the land of the defendants—that line when located, being the common line of both the plaintiffs and the defendants. The point B at the pine stump is admitted to be a corner of lot number twenty-seven on this line. In running from this point to establish the true division line the plaintiffs claim the line should run to the point C on the plat and the defendants claim it should run to the point D. The only matter then for the jury to find was whether the true corner of lot number twenty-seven was at the point C or at D, and the instructions were intended to aid the jury in finding which of these two points was the true corner.

In view of the evidence, I do not think there was any error in the first sentence or introductory part of the instruction before copied. But the second sentence, which was intended to instruct the jury as to the precise facts sought to be proved in the case, I think, was misleading and calculated to prejudice the claims of the defendants. It singles out several facts which tend to prove that the point C is the true corner and submits to the jury that, if they believe from the evidence that these facts are proven, they must find the point

C as the corner and the line BC as the true boundary line, unless they believe from the evidence that the line from B to D was *actually run and marked* as the true line.   Now there was evidence tending to prove that there was a well marked line by marked trees from B to D, some of which trees showed eighty-three annulations and one ninety-five or ninety-seven annulations.   There is no reference in the instruction to these latter facts, but on the contrary the jury are told that they must find the line BC, unless they find the line B to D was actually run and marked as the true line.   Here the attention of the jury was specially called to the facts which tended to establish the line claimed by the plaintiffs, while no fact was mentioned tending to establish the line claimed by the defendants, but they were simply told in general terms that if they believed the line claimed by the latter had been actually run and marked they were not compelled to find BC to be the true line.   I think, therefore, that this instruction plainly belongs to that class which this Court has condemned, because it singles out certain facts and directs the jury, if it finds them proved, to find for one of the parties, when there were other facts tending to an opposite conclusion, which it fails to mention.   The omission to mention such other facts was not supplied by telling the jury they were not bound to find for the plaintiffs if they believed the line BD had been actually run and marked as the true line. The alternative here offered to the jury, in contemplation of the rule of law in question, was, in effect, that they, upon the facts stated in the instruction, must find for the plaintiffs unless, in the absence of any facts, they find for the defendants.

I, therefore, think this as well as the other instructions of the same class, given to the jury, were erroneous and prejudicial to the plaintiffs in error, and that the judgment of the circuit court must be reversed, the verdict set aside and a new trial awarded.

REVERSED.   REMANDED.