# WM. R. HART v. THE UNITED STATES TRUST CO.

118 565
182 313

118 565
22 SC ¹448

ERROR TO THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued January 11, 1888—Decided February 13, 1888.

The payee, still holding a negotiable note made by an accommodation maker, became insolvent and then promised to surrender the note, but, without so surrendering, transferred it before maturity to an innocent indorsee as collateral security for an antecedent debt: *Held,*

1. That the insolvency of the payee and the violation of his promise to surrender the note, was not such a fraudulent misappropriation thereof as would entitle the maker to defend against the indorsee.

2. Lord v. Ocean Bank, 20 Pa. 384; Royer v. Keystone N. Bank, 83 Pa. 248, and Carpenter v. N. B. of the Republic, 106 Pa. 170, distinguished.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 18 July Term 1887, Sup. Ct.; court below, No. 477 December Term, 1886, C. P. No. 3.

On December 4, 1886, an action was brought by the United States Trust Company, of New York, against William R. Hart, to recover upon two notes, the copies of which filed were:

$3,417.29                     PHILADELPHIA, June 24, 1886.

Five months after date I promise to pay to the order of Martin Kalbfleisch's Sons thirty-four hundred and seventeen .29 dollars. Without defalcation, value received.

WM. R. HART.

[Indorsed]

MARTIN KALBFLEISCH'S SONS.

Pay J. A. Lewis, cashier, or order for collection for account of Manhattan Company, N. Y.

$2,518.74                     PHILADELPHIA, July 10, 1886.

Four months after date I promise to pay to the order of Martin Kalbfleisch's Sons twenty-five hundred and eighteen .74 dollars. Without defalcation, value received.

WM. R. HART.

[Indorsed as the one above.]

On December 24, 1886, an affidavit of defence was filed which set forth:

The notes of which copies have been filed are notes signed by the deponent for the accommodation of the payees, Martin Kalbfleisch's Sons, and by him delivered to them without receiving any consideration therefor; the said Martin Kalbfleisch's Sons suspended payment early in August, 1886, and at that time, as this deponent is informed, had in their possession the notes in suit, which they then promised this deponent not to use but to return to this deponent. That thereafter, this deponent is informed, the said payees caused these notes to be deposited with the plaintiff as collateral for an antecedent debt, but this deponent is informed that the plaintiff gave no value and allowed nothing upon the notes in suit; and therefore this deponent avers that the plaintiff is not a holder of

the notes in suit for a valuable consideration; all of which facts this deponent is informed and believes to be true, and expects to be able to prove at the trial of this cause, if any there be.

On February 26, 1887, the plaintiffs took a rule for judgment for want of a sufficient affidavit of defence, which rule on April 2, 1887, the court, FINLETTER, P. J., filing no opinion, made absolute, and on April 9, 1887, judgment was entered in favor of the plaintiff for $6,069.27. Thereupon the defendant took this writ assigning the order for judgment as error.

*Mr. Samuel Dickson* (with him *Mr. Richard C. Dale*), for the plaintiff in error:

The rule of Lord v. Ocean Bank, 20 Pa. 384, and that line of cases, which sustain the right of a holder of paper as collateral for an antecedent debt to enforce payment against an accommodation maker or indorser, has no application. When these notes were given to the payees, they were given to them as solvent men. Their failure changed the relations of the parties: they might then have been compelled to return the notes: Dougherty v. Central N. Bank, 93 Pa. 227. They recognized their duty to return and promised to return them; they then were no longer the holders with the right to use them for their own benefit, but bailees with the duty to return, and their subsequent use was a clear misappropriation and fraud upon the maker. While an accommodation maker may not defeat the purpose for which the paper was made, he may impeach the paper for fraud in its making or procurement, or in its misappropriation by the payee: Carpenter v. N. B. of the Republic, 106 Pa. 170; Royer v. Keystone N. Bank, 83 Pa. 248; Maynard v. Sixth N. Bank, 98 Pa. 250. In the last cited case, it was said by Mr. Justice PAXSON: "It is an undisputed fact in this cause that the note in controversy was held by the plaintiff below merely as a collateral security for an antecedent debt. It was not, therefore, a holder for value, and the defendants were entitled to set up any defence they had against the payee."

*Mr. William S. Devine* and *Mr. Samuel B. Huey*, for the defendant in error.

The maker of accommodation paper pledged for an ante-
cedent debt may not set up want of consideration as a defence
against a recovery by the indorsee : Appleton v. Donaldson,
3 Pa. 381; Lord v. Ocean Bank, 20 Pa. 386; Twining v. Hunt,
7 W. N. 223; Shaeffer v. Fowler, 111 Pa. 451, 459. While
the exception, which allows the maker in case of the fraud-
ulent use of the paper, to set up want of consideration, found
in the cases relied upon by the defendant, is as well defined as
the rule itself, yet those cases are distinctly and expressly
ruled on the ground that they do not come within the princi-
ples ruling accommodation paper. It would be extending the
exception to a point not yet reached if it be held that a defence
which admits the accommodation character of the paper, and
relies solely on the ground of an unexecuted parol promise
made after delivery, and without consideration, can avail
against an innocent holder to whom the paper was pledged
before maturity.

OPINION, MR. JUSTICE WILLIAMS :

This action was brought to recover the amount of two pro-
missory notes. They were given by Hart payable to the order
of Martin Kalbfleisch's Sons, and indorsed by them to the
trust company. The affidavit of defence set out the following
facts :

1. That the notes were without consideration, having been
made for the accommodation of the payees.

2. That before their negotiation the payees becoming insol-
vent suspended payment.

3. After such suspension the payees promised Hart not to
use, but to return the notes.

4. Notwithstanding such promise, the payees did not return
them, but turned them over to the trust company as collateral
security for an antecedent debt.

The court below entered judgment against the defendant
for want of a sufficient affidavit of defence, and this ruling is
here assigned for error.

The general rule as to the liability of the maker of an ac-
commodation note was laid down with clearness in Lord v.
The Ocean Bank, 20 Pa. 384. It was there said that "he who
chooses to put himself in the front of a negotiable instrument

for the benefit of his friend, must abide the consequences, and has no more right to complain if his friend accommodate himself by pledging it for an old debt than if he used it in any other way." Proof, therefore, that the bill or note sued on was given as an accommodation will not put the holder on proof of the consideration paid. The legal presumption is that he is a holder for value. This presumption is rebutted by proof that the bill was negotiated after its maturity, and the maker is let into any defence that he might make against the payee: Bower v. Hastings, 36 Pa. 285; Hoffman v. Foster, 43 Pa. 137. So, where the note was procured by fraud, the holder is affected by the fraud unless he shows himself to be a holder for value, before maturity, and without notice. So if one not a party to the bill or note is intrusted with it indorsed in blank, for the purpose of getting it discounted for the benefit of the maker and payee, and fraudulently appropriates it to his own use by pledging it as security for an existing debt, the maker may set up the want of consideration and the fraudulent diversion of the note as a defence against the holder: Royer v. Keystone N. Bank, 83 Pa. 248. Where the note was given as a memorandum, and not for negotiation, but the payee fraudulently pledged it as collateral security for an antecedent debt, it was held that the holder, not being a purchaser for value, could not recover: Carpenter v. National Bank, 106 Pa. 170. These exceptions rest on the proposition that fraud in the procurement or misappropriation of the note, as against one not a purchaser for value, is a defence.

We are now asked to take one more step, in the way of impairing the commercial value of accommodation paper, by holding that the insolvency of the payee happening between the procurement and the negotiation of an accommodation note, gives the maker the right to have his note retired; and that the promise of the payee to deliver it up to him makes the subsequent negotiation of it a fraud on the maker, which he can set up against the holder who has taken it as security for an existing debt of the payee. But one who lends his credit, like one who lends his money, takes the risk of the continuing solvency of the borrower. If insolvency happen it is not easy to see how the lender of his credit is placed in a worse position where it happens before, than where it happens after, the nego-

tiation of the note.  If it be conceded, as perhaps it should be, that where the insolvency happens before the note is negotiated, the maker has the right to recall his loan of credit, yet such right like the vendor's right of stoppage of goods sold while in transit must be effectually exercised or it is lost.  A request that the note be returned is not enough, nor is the promise of the payee that it will be.  It must be taken up.  So long as it is left in the hands of the payee it must be presumed in favor of one, having no notice to the contrary, that it is left on the same terms on which it was originally given, and his power to use it continues.  The duty of the maker in such cases is stated by Chitty on Bills, 457, in these words:  " Upon payment or satisfaction of a bill or note, the party making such payment should take care that the instrument be delivered up to him or his payment indorsed thereon, or he may be liable in an action by a third party, who has become the holder of the note before it became due."  On page 458 of the same work, an illustration is given in which it was held that not taking up an accommodation bill which A. had given to B., and which B. had pledged to C. for the payment of certain acceptances, but permitting it to remain in C's hands after the acceptances were paid, raised a presumption that A. had left his acceptance as security for advances subsequently made by C. to B.

In the case now before us Hart lent his note to Kalbfleisch's Sons for their accommodation.  Whatever conversation he may have had with them after their failure, he did not take back his note but left it in their possession.  They made use of it before its maturity to secure an antecedent debt and perhaps saved themselves thereby from legal proceedings at the instance of the creditor.  The trust company appear to have taken it without notice of the alleged agreement, in the ordinary course of business, before maturity, as security for an antecedent debt, and we can see no reason why they should not be permitted to collect it.  It is better not to extend the exceptions to, or go further in the impairment of, the negotiability of accommodation paper.  A note fairly obtained and properly used cannot be defeated in the hands of the holder, because the payee had promised to deliver it up, but had not done so, and that is the substance of the defence set up in this case.  If the maker had the right to recall it when the payee became

insolvent, he did not do so, and he cannot ask us to do after the negotiation of the note what he should have done, but failed to do, while it was in the hands of the payee.

Judgment affirmed.

