# CHARLESTON.

UNION TRUST CO. *v.* McCLELLAN.

Submitted January 19, 1895.—Decided April 3, 1895.

| | |
|---|---|
| 40 | 405 |
| 40 | 442 |
| 40 | 542 |
| 40 | 405 |
| 41 | 468 |
| 40 | 405 |
| 44 | 239 |
| 44 | 529 |
| 44 | 537 |
| 40 | 405 |
| 46 | 391 |
| 40 | 405 |
| 48 | 291 |
| 48 | 581 |
| 40 | 405 |
| 50 | 691 |
| 40 | 405 |
| 51 | 90 |
| 51 | 155 |
| 51 | 261 |
| 51 | 345 |
| 52 | 217 |
| 40 | 405 |
| 56 | 666 |
| 40 | 405 |
| 60 | 457 |
| 60 | 655 |
| 40 | 405 |
| 61 | 450 |
| 40 | 405 |
| 62 | 414 |
| 40 | 405 |
| 65 | 247 |
| 65 | 404 |

1. NEGOTIABLE NOTE—ACCOMMODATION PAPER—BURDEN OF PROOF.

   Where it is shown in evidence that a certain negotiable promisory note was made and delivered to the payee at his instance, and for his accommodation for a specific purpose, and that such payee without the knowledge and consent of the maker, used such note for a different purpose, the burden is on the holder of such note to show that he received it in the ordinary course of business, before maturity, for value, without notice of its wrongful misuse by the payee, before he can recover from the maker.

2. NEGOTIABLE NOTE—VALUABLE CONSIDERATION—PRE-EXISTING DEBT.

   A pre-existing debt is not such valuable consideration as will protect the holder of a negotiable note wrongfully pledged as collateral security by the payee.

3. WITNESS—MATERIAL FACT—CONCLUSIVE PRESUMPTION.

   Where the burden is on a party to a suit to prove a material fact in issue, the failure, without excuse, to produce an important and necessary witness to such fact, raises the conclusive presumption that such witness' testimony, if introduced, would be adverse to the pretensions of such party.

JOHNSON & HALE for plaintff in error, cited 1 Par. Bills. & N. 188; 2 Par. Bills & N. 105; Smith Transf. Neg. Pa. 7; 28 W. Va. 333; 35 W. Va. 391; 13 W. Va. 261; 35 W. Va. 260; 1 Par. Bill & N. 501; 23 W. Va. 90, 97; 21 W. Va. 455; 10 W. Va. 662; 12 W. Va. 772, 611.

A. W. REYNOLDS for defendant in error, cited 1 Greenl. Ev. § 82; 27 W. Va. 17; 83 Pa. St. 248, 372; 106 Pa. St. 170, 173; 118 Pa. St. 565; 151 Pa. St. 228, 229; 26 Atl. Rep. 186; 3 Am. & Eng. Enc. Law 542; Code, c. 13, s. 14; 14 Sup. Ct. Rep. 816; 31 W. Va. 662; 24 W. Va. 606; 17 W. Va. 683; 14 W. Va. 708; 18 W. Va. 1, 766; 27 W. Va. 75; 32 W. Va. 120; 34 W Va. 155; 8 W. Va. 373; 6 W. Va. 388; 7 W. Va. 348.

DENT, JUDGE:

A suit brought by the Union Trust Company against J. L. McClellan on a certain promissory note, in the Circuit Court of Mercer county, resulted on the 24th day of February, 1894, in a judgment for the defendant, from which the plaintiff obtained a writ of error, and here relies on the following prolix and argumentative assignment, to wit: "*First.* The court erred in permitting the defendant to read as evidence to the jury the deposition of Wm. B. Reed, over the objections of the plaintiff. This deposition was wholly immaterial and irrelevant. This suit was brought upon a note negotiable under the laws of the state of Pennsylvania. The plaintiff was the owner thereof, having taken it for value, and this deposition undertakes to explain the circumstances under which it was executed by the defendant to the said Wm. B. Reed, the payee thereof. *Second.* The said Circuit Court erred in permitting the defendant to testify before the jury in explanation of the circumstances under which he executed the said negotiable note to the said Wm. B. Reed, over the objection of the plaintiff. *Third.* The court erred in permitting the defendant to testify to the jury why the said Reed proposed to give to the said defendant five hundred shares of stock in the Fottrell I. W. C. Company, over the objection of the plaintiff. This was wholly irrelevant and immaterial, and tended to lead away the mind of the jury from the issue in the case. *Fourth.* The court erred in permitting the defendant to testify before the jury as to the opportunity that the plaintiff had to see the defendant in Philadelphia, and as to the number of times they passed by the plaintiff's place of business while in Philadelphia, and as to where he first found out that the note sued on in this case had not been used according to the contract between him and the said Reed, and as to how long it was before the first action was brought on said note, over the objections of the plaintiff. *Fifth.* The court erred in refusing to strike out the whole of the examination in chief of the defendant. *Sixth.* The said court erred in refusing to strike out the whole of the defendant's evidence in this case, and direct the jury to find a verdict for the plaintiff, because it presented no valid de-

fense. This practice was approved by the court of appeals of this state in the case of *Spencer* v. *Rose*, 28 W. Va. 333. *Seventh.* The court erred in permitting the defendant to testify to the jury in surrebuttal that he had never executed the note referred to in the deposition of D. Howard Foote, read in the case before the jury. *Eighth.* The court erred in refusing to give to the jury, at the instance of the plaintiff, instructions Nos. 1, 2, 3, 4 and 5. It was clearly error in the court in refusing to give these instructions, especially so as to No. 3. There was evidence in the case showing that the note sued on was endorsed to the plaintiff by the payee, Reed, for a consideration, and there was evidence showing or tending to show that a consideration passed from the payee, Reed, to J. L. McClellan, the maker thereof, and there was evidence tending to show that Reed, the payee, practiced a fraud upon McClellan, the maker; and it is hard to conceive why the court rejected this instruction, which was intended to meet this view of the case. *Ninth.* The court erred in giving to the jury instruction No. 1 for the defendant. This was clearly erroneous. It garbles the facts, and violates a well established principle. It put prominently before the jury parts of the evidence, and ignored other parts of the evidence. It is long, prolix and hard to understand, and does not propound the law correctly. *Tenth.* The verdict was contrary to the evidence in the case. Wm. B. Reed in his deposition says that the note was given him for the purpose of having it discounted; and he further said in his deposition that said note was used by him in paying for stock in the Fottrell I. W. C. Company for the defendant. The whole evidence in the case shows that the note sued on was either based on valuable consideration to the defendant, the maker, or that it was an accommodation note given by the defendant to accommodate his friend, Wm. B. Reed, and in either event the verdict should have been for the plaintiff."

No other errors were assigned at the bar, and, as none are apparent from the record after careful inspection, it must be presumed they do not exist, as the able counsel for the plaintiff would not have overlooked them.

. The four instructions asked for plaintiff and refused, are

as follows, to wit: "Instruction No. 2: The court further instructs the jury that if they believe from the evidence in this case that the note sued on in this case was made and delivered by the defendant, McClellan, to Wm. B. Reed, as payee, for the personal accommodation of said Reed and with the understanding that the said Reed should use the said note for the purpose only of paying for or showing to the stockholders of the Fottrell Insulating Wire Cable Company that five hundred shares of the capital stock of said company had been paid for by the said defendant, or the said defendant and said Reed jointly; and the jury shall further believe from the evidence in this case that the said Reed, with said understanding, which he made known to the plaintiff at the time he negotiated said note to the plaintiff, and that he did, before the maturity of said note, negotiate the same to the plaintiff for value by getting the money thereon, by having the same discounted, and getting the money, or by having his own note discounted, and at the time of such discount, and in part consideration thereof, he, Reed, deposited the note in suit as collateral security—then the jury should find for the plaintiff. Instruction No. 3: The court instructs the jury that if they believe from the evidence in this case that the note sued on in this case was taken by Reed, the payee, for valuable consideration, and that the said Reed indorsed and delivered the said note to the plaintiff for valuable consideration, then the plaintiff has the right to recover on said note, unless they further believe from the evidence in this case that the said Reed procured said note from the defendant through fraud, and that the plaintiff, at the time it took said note, knew of said fraud, and the burden of proving said fraud and notice is on the defendant. Instruction No. 4: The court instructs the jury that if they believe from the evidence in this case that the note sued on in this case was made by the defendant J. L. McClellan to W. B. Reed, as payee, and that said note was made for the purpose of discount, and that the said Reed, before the maturity of the said note, indorsed and delivered the same for value to the plaintiff, Union Trust Company, then the said plaintiff is entitled to recover in this case, unless the jury shall believe

from the evidence in this case that the said note was obtained by the said Reed from the said McClellan by fraud, and that the plaintiff had knowledge of such fraud when it took the said note from the said Reed; and the burden of proving fraud is on the defendant. Instruction No. 5: The court further instructs the jury that if they believe from the evidence in this case that the plaintiff took the note in suit before its maturity, for value, and without notice of any equities (if the jury from the evidence shall believe any equities existed) between the defendant McClellan and W. B. Reed, the payee of said note, then the plaintiff is entitled to recover in this case, and the jury should so find." Indorsement on this instruction by the judge of the court: "This instruction is refused upon the ground that it is abstract, and submits to the jury questions of what equities are, and tends to mislead it—the jury. R. C. M."

The instruction given for defendant over objection of plaintiff is as follows: "Defendant's instruction No. 1: The court instructs the jury that if they believe from the evidence in this case that the defendant, J. L. McClellan, made and delivered to W. B. Reed, payee, the note sued on in this case, that it might be indorsed by him, said Reed, and delivered to the Fottrell Insulated Wire and Cable Company at a then proposed meeting of the stockholders thereof, in order to have the books of said company to show that said McClellan had fully paid up for five hundred shares of the capital stock of said company; and if the jury further believe from the evidence that the said W. B. Reed had agreed, or did agree, that he would give said five hundred shares of said capital stock to said McClellan in consideration of certain sales that McClellan had made for said Reed of Penn placer mining stock; and if the jury believe from the evidence that the said note was made by said McClellan and received by said Reed for the purpose aforesaid, and for no other purpose, and that it was the contract and agreement between said Reed and said McClellan at the time said note was made and delivered that said note should be used for said purpose, and none other; and if the jury further believe from the evidence in this case that said Reed agreed with said McClellan, at the

time of the making and delivery of the note sued on in this case, that he, said Reed, would pay the amount of said note to said Fottrell Insulated Wire Cable Company, and that said McClellan should not pay the same; and if the jury further believe from the evidence in this case that the said W. B. Reed, in violation of his said contract with McClellan, instead of using said note for the purpose aforesaid, indorsed and delivered the said note to the plaintiff in this case; and if the jury believe from the evidence in this case that said endorsement and delivery of said note was made to one M. S. Stokes by said Reed, that said Stokes was at the time the treasurer of said plaintiff, the Union Trust Company, and was authorized to act for said plaintiff, and did act for it in said negotiation, and received said note from sa'd Reed for said company, and that at the time said Stokes so received said note from said Reed said Stokes knew of the specific purpose for which said note was executed, and the facts and circumstances attending its making and delivery aforesaid—then the jury should find for the defendant in this case, notwithstanding they may further believe from the evidence in the case that the plaintiff paid a valuable consideration to said Reed for said note."

The facts clearly established by the evidence are as follows: W. B. Reed feeling himself under obligation to the defendant for certain services rendered by the latter in disposal of certain shares of stock, agreed to give him five hundred shares of stock in the Fottrell Insulated Wire Cable Company; and he obtained from the defendant the following note: "$1,000.   Oct. 21, 1889.   Ninety days after date I promise to pay to the order of W. B. Reed at the    *    *    * one thousand dollars, without defalcation, value received. J. L. McClellan."   Indorsed: "Protest waived.   W. B. Reed"—to show the directors of the company that the stock promised defendant was fully paid, and then he would pay for the stock in a few days, and take up the note.   That said Reed then took said note, which was negotiable under the laws of Pennsylvania, the place of making being Philadelphia, and transferred the same to the plaintiff, either as collateral security for his own note, executed for money then

borrowed, or for a pre-existing debt. That defendant resided in Norristown, seventeen miles out of the city, and remained at Philadelphia until March 1, 1890, and, except that Reed informed him that he had paid off the note, he heard nothing from it, and never knew it was held by the plaintiff, until May, 1891, after he had moved to West Virginia, shortly before suit was brought upon it.

There are some disputed questions of fact in the case. Mr. Reed, the payee of the note, says that he assigned and delivered the same to one M. S. Stokes, secretary and treasurer of the plaintiff, as a collateral security for his own note, executed at the same time; that Mr. Stokes knew the purpose for which the McClellan note was executed, and at first objected, but finally took it. D. Howard Foote testifies that he was assistant treasurer of the Union Trust Company during the year 1889 (in his first deposition) and that W. B. Reed brought the note to the company, and obtained a loan on it. His deposition was taken a second time January 11, 1894, and he then testified that it was given in renewal of another note of defendant. Reed and McClellan both testify that they never gave any such prior note as the witness Foote refers to in his last deposition. There are other matters of controversy in this case, but these are all that are necessary for its correct decision.

It is the settled rule of commercial law that where a negotiable note is given for a specific purpose, is endorsed and used by the payee for an entirely different purpose, without the knowledge or consent of the maker, the burden of proof is on the holder of such note to show that he received it in the ordinary course of business before maturity for a valuable consderation, and without notice of its misuse by the payee before he can recover from the maker. Also that one who takes an accommodation note as a collateral security for an antecedent debt is not a holder for value. Such is at least the law of Pennsylvania, where the note in controversy was executed. *Bank* v. *Dunn*, 151 Pa. St. 228 (25 Atl. 80); *Hart* v. *Trust Co.*, 118 Pa. St. 565 ( 12 Atl. 561); *Carpenter* v. *Bank*, 106 Pa. St. 170; *Royer* v. *Bank*, 83 Pa. St. 248; *Wardell* v. *Howell*, 9 Wend. 170; *Coddington* v. *Bay*, 20 Johns. 637.

In the case of *Woodhull* v. *Holmes*, 10 Johns. 230, it was laid down as a rule that "a party to negotiable paper may be a witness to prove facts subsequent to the due execution of the note, and which destroy the title of the holder." Defendant, McClellan, was a competent witness to show why the note was executed, and that it was afterwards misapplied by the payee. Having done this, both by the testimony of himself and the payee, Reed, the burden was then on the plaintiff to show that it was a *bona fide* holder before maturity, for value, without notice.

Plaintiff's second, third and fourth instructions were properly refused for the reason that they sought to cast the burden of proving both fraud and notice upon the defendant. The second instruction goes so far as to claim that even if the plaintiff had notice, it was entitled to recover. The fifth instruction was properly refused for the reasons given by the court, that it was abstract, uncertain and would tend to mislead the jury. All these instructions ignore many of the facts in the case, and were properly refused for this reason. *Storrs* v. *Feick*, 24 W. Va. 606; *McMechen* v. *McMechen*, 17 W. Va. 683.

The instruction given for defendant, while it is long, yet it is hard to see how it could be any shorter, and properly state the case from the defendant's standpoint. It is too plain for the jury to have been misled by it, and it correctly propounds the law. There can not be the possibility of a doubt but what this case was rightly decided both by the jury and the court. The preponderance of the evidence is clearly in favor of the defendant. The plaintiff appears to have entirely ignored the law that the burden was upon it of proving want of notice of the fraud vitiating its title. The only witness it could have proved this by was M. S. Stokes, its former secretary and treasurer, with whom Mr. Reed says he dealt when he transferred the note to the plaintiff, and whom he says had full knowledge of the purposes of its execution. Not only does this prove notice, but the presumption of the law is that Mr. Stokes would have so testified if his evidence had been taken; and it was suppressed for this reason. "No rule of law is better settled than that a party

having it in his power to prove a fact, if it exist, which, if proved would benefit him, his failure to prove it must be taken as conclusive that the fact does not exist." *City of Wheeling* v. *Hawley,* 18 W. Va. 472; *Hefflebower* v. *Detrick,* 27 W. Va. 16. And much more is this the case where the burden is on the party who fails to produce the only witness to the fact.

It is true that the evidence of D. Howard Foote is taken twice on this subject. But his statements are contradictory and uncertain, and he is contradicted by both McClellan and Reed, all of which made the testimony of M. S. Stokes the more necessary, and the presumption of the adverse character of his testimony the stronger.

Of two innocent sufferers from the wrong of a mutual friend the defendant, from the evidence, has the better right, and for this reason the judgment is affirmed, there appearing no error in the record prejudicial to the plaintiff.