# CHARLESTON.

STATE *v.* EMBLEM.

(BRANNON, PRESIDENT, *dissenting.*)

Submitted February 5, 1898—Decided March 30, 1898.

HOUSES OF ILL FAME—*Contracts—Lease—Sale—Instructions.*

> Where a party is indicted under section 10 of chapter 149 of the Code, as amended and reenacted by chapter 8 of the Acts of 1893, for knowingly leasing or letting to another any house or other building for the purpose of being used or kept as a house of ill fame, and the defendant claims to have sold the property, and offers in evidence to the jury the written contract by which said sale is claimed to have been made, and asks the court to instruct the jury as to its meaning, character and legal effect, as, for example, whether it is a lease or a contract of sale, it is the duty of the court to construe such contract, and to instruct the jury as to its character. (p.p. 523, 527).

Appeal from Circuit Court, Ohio County.

Elizabeth Emblem and another were convicted of unlawfully leasing a certain house. Elizabeth Emblem applied to the circuit court for a writ of error, and from an order refusing the writ she appeals.

*Reversed.*

DOVENER & CONIFF, for appellant.

T. S. RILEY and JOHN H. HOWARD, for the State.

HOLT, JUDGE:

On the 1st day of April, 1896, judgment was rendered

in the criminal court of Ohio county against defendant Elizabeth Emblem and W. T. Emblem for fifty dollars each, on conviction of the offense of knowingly leasing and letting to another a certain house for the purpose of being used and kept as a house of ill fame. Elizabeth Emblem applied to the circuit court for a writ of error, which was refused, and from such refusal she has appealed to this Court. The indictment is founded in section 10, chapter 149, Code, as amended by chapter 8, p. 27, Acts 1893.

The indictment, containing three counts, was demurred to as a whole. Was it error to overrule the same? The first count charges that the defendant, on the 6th day of May, 1895, in the city of Wheeling, did unlawfully, willfully, and knowingly let a certain house there situated, describing it by street, number, etc., to a certain person, giving the name, with the intent that the said person keep the same as a common bawdy house and house of ill fame, and that the said Georgia Frank afterwards used and kept the said house as a house of ill fame, etc. Every material fact necessary to be proved to support a conviction seems to be plainly alleged, with due specifications of time, place, persons, etc., so that the demurrer was properly overruled.

During the progress of the trial it was shown, without contradiction, that, at the time of the alleged offense, Georgia Laning, *alias* Georgia Frank, used and kept the house in question under the following instrument (Exhibit A):

"Wheeling, Oct. 18, 1893. This memorandum of agreement, made between Elizabeth Emblem, of the city of Wheeling, county of Ohio, and state of West Virginia, party of the first part, and Georgia Laning, party of the second part, witnesseth: That the party of the first part agrees to sell and grant unto said second party the two-story brick house, situated on the west side of Eoff street, between 18th and 19th streets, in the city of Wheeling, and numbered (1811) eighteen hundred and eleven, for ($6,500.00) six thousand five hundred dollars, with interest at 8 per cent., payable quarterly in advance. Time granted to pay the principal is not to exceed 5 years from date. The party of the second ——— is to pay all taxes on said house punctually when due. Should the party of the sec-

ond part fail to comply with the above article of agreement, the party of the first part, agent or assign, shall enter and take possession of said premises without notice or demand, the same as though this agreement had not been made, and money paid will be forfeited as damages for the wear and tear of said premises. Payments of $300 on the principal can be made quarterly. Title to the property will be retained until two-thirds of the purchase money has been paid, and the residue is secured by a deed of trust to secure the deferred payments due thereon, and in consideration of the above the said Georgia Laning agrees to buy the said part of lot on said terms. The said party of the first part hereby acknowledges the receipt of $5.00 to bind the above contract. Witness our hands and seals this 18th day of October, 1893.

> "Elizabeth X Emblem. [Seal.]
> her
> mark
>
> "Georgia Laning. [Seal.]"

In consideration of this evidence, the defendants asked the court to give the following instruction, but the court refused to give the same : "Instruction. The court instructs the jury that if they believe from the evidence that the defendants and Georgia Frank made and entered into the contract of sale, introduced in evidence, of the property named in the indictment, and further believe that for one year next preceding the finding of the indictment in this case the said Georgia Frank occupied said property under said contract of sale, then the jury must find the defendants not guilty." Whether this written instrument is on its face a contract of sale or a contract of lease is a question of law for the court, whose duty it was to construe the instrument and determine its legal effect. *Railroad* v. *McKenna*, 13 Lea. 280; 1 Thomp. Trials, § 1199; 2 Pars. Cont. 610, note. And in this case it was the duty of the court to tell the jury that this instrument was by its terms and in legal effect a contract of sale, and not a lease, and that if the said Georgia Frank, *alias* Georgia Lanning, occupied said property under said contract of sale, then the jury must find the defendants not guilty and this, for the plain reason that a sale, even with

knowledge of the vendor that the house was intended to be
used for such purpose, is not within the letter or the mean-
ing of that clause of the statute. It is true that if there
was any evidence before the jury tending to show that this
sale was a mere shift or device intended to evade the stat-
ute, then it would have been proper for the court to have
added that, if the jury were convinced by the evidence,
beyond all reasonable doubt, that the instrument was a
mere sham, that the house was still owned by defend-
ants or was under their control, and that defendants leased
or let the house in question to Georgia Laning, *alias* Frank,
for the purpose of being used or kept as a house of ill fame,
then they should find the defendants guilty. For this rea-
son defendant's motion for a new trial should have been
sustained; and it is here so ordered. Reversed and re
manded.

ON REHEARING.

ENGLISH, JUDGE:

This case was argued and submitted on the 20th day of
June, 1896, and an opinion was handed down on the 5th day
of December, 1896, by the late JUDGE HOLT, reversing the
judgment of the court below, and remanding the cause for
a new trial, which was awarded. On the petition of the
State, a rehearing was awarded, and the case was again
submitted on argument, and the same is now before us
again for consideration. As stated by JUDGE HOLT in his
opinion, which is inserted above for convenience, the in-
dictment was found under section 10, chapter 149, Code,
as amended by Acts 1893, c. 8, and contained three counts.
The first charges that the defendants, on the 6th day of
May, 1895, in the county of Ohio and city of Wheeling, did
unlawfully, wilfully, and knowingly let a certain house
there situate, of theirs, describing its locality, to one
Georgia Frank, with the intent that the said Georgia Frank
should afterwards, and during the continuance of such
lease thereof, there keep and maintain the said house as a
common bawdy house and house of ill fame, and during the
continuance of such lease thereof, to wit, on the day and
year aforesaid, and on divers other days and times be-
tween that day and the day of the taking of this inquisition,

in the city of Wheeling, in the said county of Ohio, the said Georgia Frank did actually keep and maintain the said house as a common bawdy house and house of ill fame, to the great scandal, etc. The second count charged that the defendants unlawfully and knowingly did permit said house owned by them (describing it) to be unlawfully used and kept as a house of ill fame, by one Georgia Frank, against the peace, etc.; and the third count charged that the defendants, on the day and year aforesaid, in the county aforesaid, unlawfully and knowingly did permit said house under their control (describing it) to be unlawfully kept as a house of ill fame by one Georgia Frank, against the peace, etc. This indictment was demurred to, but, as the same appears to follow the language of the statute, I regard it sufficient. It is contended that two offenses are charged in the first count, to wit, knowingly leasing the property on a certain day to be used for such unlawful purpose, etc.; and then charges that, after said renting, the house was used as a house of ill fame. This latter clause of the count, however, charges no offense on the part of the defendants. It charges that Georgia Frank so used the house, and does not even charge that the defendants knew it was so used, and this latter portion of the count, constituting no part of the indictment against the defendants, may be treated as surplusage; and, as Judge Holt says in his opinion, "every material fact necessary to support a conviction seems to be plainly alleged, with due specifications of time, place, persons," etc., and I agree with him that the demurrer was properly overruled. In order to sustain this indictment under this statute, it was necessary for the State to show that the defendants knowingly leased to said Georgia Frank the house described in the indictment, with the intent that she should, during the continuance of the lease, use the same for the purpose therein set forth. Did the defendants lease said house to Georgia Frank for any purpose? The contract under which said Georgia Frank, *alias* Georgia Laning, held and occupied the property is fully set forth in the opinion of Judge Holt, and was offered in evidence, and was admitted without contradiction. Referring to the terms of said contract, it is at once perceived to be a contract for

the sale of said house between the defendant Elizabeth Emblem and said Georgia Laning, for the consideration of six thousand five hundred dollars, the title to be retained until two-thirds of the purchase money was paid, and the residue was to be secured by a deed of trust, and said Georgia expressly agreed to purchase said property on said terms, which agreement appears to have been signed and sealed by both of the parties thereto, and a portion of the purchase money was paid down.    Now, in order to convict the defendants under this indictment, it was necessary and incumbent upon the State to show that the defendants leased the said property to said Georgia knowingly, to be used for such purpose; or that, while the house was still owned by them, the said defendants unlawfully and knowingly permitted said property to be used and kept for such purpose by said Georgia; or that they permitted said property under their control to be unlawfully used and kept for said purpose.    The only effort made by the State was to show that said contract was in reality a lease, and intended as such, and to have the jury infer that the defendants knew for what purpose it was to be used, by circumstantial evidence.

During the process of the trial the defendants asked the court to instruct the jury that "if they believed from the evidence that the defendants and Georgia Frank made and entered into the contract of sale introduced in evidence of the property named in the indictment, and further believe that for one year next preceding the finding of the indictment in this case the said Georgia Frank occupied said property under said contract of sale, then the jury must find the defendants not guilty."    It is apparent, at once, that the facts stated in said instruction, if true, were inconsistent with the defendants' guilt.    The contract on its face was manifestly a contract of sale, and, if said Georgia occupied said property as a purchaser, this indictment could not be sustained against the defendants, even if they knowingly sold it to her to be used as a house of ill fame. This instruction merely called for a construction of said contract.    If it was a contract for the sale of the property, the defendants could not be found guilty under the statute. This instruction did not take from the jury the testimony

bearing upon the *bona fides* of the transaction.    The court was asked to instruct the jury that "if they believed from the evidence that the parties made and entered into this contract of sale," etc.; and I agree with the opinion of JUDGE HOLT that the court erred in refusing this instruction.    See 1 Thomp. Trials, § 1067, where the author says: "The obligation of the court to expound the meaning of written instruments to the jury, and not to submit such questions to them, embraces every species of writings,— contracts, records, deeds, wills, and all others.    So, where a disputed question turns upon the construction of two or more written instruments, which are to be construed together, it is the duty of the court to construe them, and to declare their meaning to the jury, and to direct a verdict if in the state of the case a due construction of the instruments determines the controversy.".    See, also, *Helmholz* v. *Everingham*, 24 Wis. 266.

The last instruction asked for and given at the instance of the state reads as follows:    "The court instructs the jury that if they believe, beyond all reasonable doubt, from all the evidence, that the defendant Eliaabeth Emblem committed the offense charged in the indictment, and that the defendant Wm. T. Emblem knowingly aided and abetted her in committing the said offense by assisting her in making the lease or contract, or by collecting the rents, then it is the duty of the jury to find both the defendant Elizabeth Emblem and Wm. T. Emblem guilty."    This instruction was objected to, and the objection overruled; but, in my opinion, the objection should have been sustained, for the reason that said instruction was calculated to mislead the jury, by speaking of the lease or contract, and also of collecting the rents, and was well calculated to cause the jury to believe that the court regarded the contract as a lease, and the payments made thereon as rent. For these reasons the verdict of the jury should be set aside, the judgment reversed, and a new trial awarded.

McWHORTER, JUDGE; (*concurring*):

While I concur in the result reached in the opinion of JUDGE ENGLISH, I cannot concede that the instruction

asked by the defendants, and refused by the court, was proper to be given, and that the court erred in refusing it. The form in which the instruction was offered was calculated to mislead the jury, as I think, also, was "the last instruction asked for and given at the instance of the State."

BRANNON, PRESIDENT, (*dissenting*):

I cannot agree in some points with JUDGE ENGLISH's opinion. The demurrer to the indictment was properly overruled. The first count does not charge both the offense of letting and that of permitting a house to be kept as a house of ill fame, contrary to chapter 8, Acts 1893; they being, it is true, separate offenses. The count charges that the defendants knowingly let a certain house, with intent that a certain woman should keep it as a house of ill fame, and goes on to allege that she did keep it as such, which is surplusage, as the mere letting the house for such purpose makes a complete offense; but it does not charge that the defendants knowingly permitted it to be kept as such house. It charges that the woman actually kept it, not that the defendants knowingly permitted her to do so; since, for aught that appears, the defendants might not have known that she did, after the letting, keep it. It does not charge this other offense of knowingly permitting the woman to keep it, not containing the words "knowingly permit." It would not be good for that charge. The second and third counts charge this act in the language of the statute, and are good.

A special plea that the indictment alleges the offense on 6th day of May, and that the same day the grand jury found the indictment, was rejected. The theory is that, where an indictment is found on the same day the offense is alleged to have been committed, it is fatally defective, notwithstanding the indictment shows it was filed subsequently to the commission of the offense; citing 10 Am. & Eng. Enc. Law, 462, and Whart. Cr. Pl. & Prac. § 120. The cases cited there do not bear out this proposition. They are where the date of offense was after the finding or the like. They do not hold the unreasonable proposition that,

where a murder is committed in the morning, an indictment found in the evening of the same day is bad. So it charge a past offense, it is enough. This indictment does. Again, under our statute, the omission to state, or imperfect statement of, time, does not hurt an indictment. Code, c. 158, c. 10. You can state one date and prove another.

The instructions of the State were good. It is objected that one said that, if defendants knowingly let or leased the house for use as a house of ill fame, and the woman did so use the house with defendants' knowledge, the defendants were guilty, whereas there was no evidence tending to show a lease, but a sale, as an instrument between the parties showed a sale, not a lease. But the State, under the evidence, claimed that that was a sham and device to evade the law, by showing a colorable sale, when in fact it was but a letting; that it was no sale, but a letting. That was a jury question. If it was really no sale, but a shadow; if the owner and the woman charged with keeping a house of ill fame did really intend, not a sale, but an occupancy for an illegal purpose,—it was a lease or letting for that purpose, the language of the paper to the contrary notwithstanding. Though, as between the parties to it, the writing was undeniably a sale, yet the State was not a party to it, nor bound by it, and could show that it was, as to the State, a mere letting.

The defense complains that the court refused an instruction that if defendants and the woman keeping the house made the written contract of sale, and for one year before indictment the woman occupied the house under that contract, "the jury must find the defendants not guilty"; thus utterly ignoring the evidence relied on by the State as tending to show that the occupant was not, in fact, in possession under the sale, but under a letting as between landlord and tenant, as before the writing, and that there was in fact no sale, and the instruction binding the jury to acquit on the two facts alone of the execution of the writing and the occupation under it. This was wrong. *Woodell* v. *Improvement Co.*, 38 W. Va. 23, syl. point 3, (17 S. E. 386); *Storrs* v. *Feick*, 24 W. Va., 606; *Trust Co.* v *McClellan*, 40 W. Va., 412, (21 S. E. 1025). A party is entitled to an instruction in his own language, if correct. *Jordan* v.

*City of Benwood,* 42 W. Va. 312, (26 S. E. 266). But, if not correct, court is not bound to redraft or modify it. *Shrewsbury* v. *Tufts,* 41 W. Va. 212, (23 S. E. 692); *State* v. *Caddle,* 35 W. Va. 73, (12 S. E. 1098). If asked, it was the duty of the court to say that the face of the contract spoke a sale, not a lease; and if as drawn the instruction had added something to the effect, "unless the jury believe from the evidence that the sale contract was designed by its parties as a sham and fraud, to make a colorable sale to evade the law, when in fact the woman was merely a tenant," it would have been good. It will not do to play on the words in the instruction, "under said contract of sale," and say that it only asks an acquittal provided the jury find the woman occupied "under the contract"; ignoring the question that, though in possession under it nominally or colorably, yet it was a fraudulent sale to evade law, was in fact a putting in possession by the owner of one to keep a house of ill fame, and a violation of the statute. no matter that the entering into possession or continuing in possession was under the guise of a sale. That was a question for a jury. I think the instruction given for the State, condemned by JUDGE ENGLISH, touching the accessory, is plainly good.

*Reversed.*