# CHARLESTON.

BOND v. NATIONAL FIRE INSURANCE COMPANY.

Submitted February 15, 1916.    Decided March 14, 1916.

1. ACTION—*Consolidation of Suits—Discretion.*
   The consolidation of suits, in law and equity alike, is a matter addressed to the sound discretion of the court. A defendant is not entitled, as a matter of right, to have such suits consolidated. (p. 742).

2. APPEAL AND ERROR—*Trial—Discretionary Ruling—View by Jury.*
   The allowance of a view by a jury is peculiarly within the discretion of the trial court, and its refusal will not be ground of reversal, unless it is clearly manifest that a view was necessary to a just verdict, and that its refusal operated to the injury of the party asking it. (p. 742).

3. INSURANCE—*Fire Insurance—Replication—Adjustment of Loss.*
   A special replication of a plaintiff suing upon a policy of fire insurance stating that notice of the fire was given to the insurance company, and that the company proceeded to and did adjust the loss with the plaintiff, *whereby* it agreed to pay the sum of $———— in discharge of its obligation under the terms of the policy, which sum the plaintiff agreed to accept in satisfaction of the liability, is defective, as it construes an adjustment of the loss as a promise or agreement to pay the loss. An ascertainment of the loss does not necessarily import a promise to pay it. (p. 754).

4.  SAME—*Special Agent*—*"Adjuster"*—*Powers.*
    An adjuster is a special agent for the person or company for whom he acts. His powers and authority are prima facie coextensive with the business intrusted to his care.  (p. 749).

5.  SAME—*Insurance Adjuster*—*Powers.*
    An insurance adjuster is ordinarily a special agent of limited authority to ascertain and adjust the loss, having no power merely as such in the absence of some evidence as to his authority to alter the contract, or waive any of its essential conditions.  (p. 749).

6.  SAME—*Adjustment of Loss*—*Agreement to Pay.*
    An adjustment of the amount of the loss, and an agreement to pay the amount as adjusted, are two distinct and independent things.  (p. 749).

7.  SAME—*Fire Insurance*—*Adjustment of Loss*—*Estoppel.*
    A mere adjustment of a loss, unless such adjustment is accepted by the insurance company with a promise to pay, will not estop the insurer from denying his liability. It is a mere step to ascertain and fix the amount of the loss. The adjustment does not fix the liability in and of itself without promise of payment.  (p. 749).

8.  SAME—*Fire Insurance Policy*—*Waiver of Conditions*—*Effect.*
    The waiver by the insurer of one of the promissory covenants of a policy of insurance does not waive other conditions of the policy, unless it clearly appear that such was the intention of the parties.  (p. 748).

9.  TRIAL—*Instruction*—*Evidence.*
    Although an instruction correctly states the law, yet if not applicable to the facts and circumstances of the case, it tends to mislead the jury and should not be given.  (p. 748).

10. SAME.
    An instruction should not be given when there is no evidence tending to prove the facts upon which the instruction is based.  (p. 748).

11. SAME—*Construction of Writings*—*Question for Jury.*
    As a general rule the construction of all written documents given in evidence belongs to the court exclusively.  (p. 749).

12. APPEAL AND ERROR—*Presentation for Review*—*Bill of Exceptions*— *Rulings on Evidence.*
    Where a stenographic report of evidence is made part of the certificate of evidence upon a motion for a new trial, and it shows objections to questions or evidence, and rulings of the court thereon, and that such rulings were excepted to, and the particular question or evidence complained of is specified distinctly in the motion for a new trial, or in an assignment of error, or in brief of counsel,

so that the appellate court can readily and safely find the particular question or evidence to which the exception relates, the appellate court will consider the matter excepted to, though there is no formal bill of exceptions thereto; but such matter will not be considered without such specification, even though such report of evidence notes such objection and exception. (p. 755).

13. SAME — *Discretionary Ruling—Examination of Witness—Experiments.*

Where a witness has testified to the correctness of a paper in evidence, and says that he wrote the paper, and on cross-examination is asked to rewrite certain words with a view of comparison with the paper purporting to have been written by him, and objection is made, it is within the sound discretion of the court trying the case to determine whether or not under the circumstances the experiment shall be made, and an appellate court will not reverse the judgment of the trial court for either permitting or refusing the experiment to be made, unless it plainly appear that he has abused the discretion. (p. 755).

14. TRIAL—*Argument of Counsel—Reading from Statute.*

Where a deputy fire warden who is paid a salary out of the state treasury is a witness in a case relating to acts performed in his official capacity, it is not error for counsel in his address to the jury to read as part of his address a statute of this state showing how the money was raised out of which the salary of the officer was paid. This would not affect the merits of the case, and permission to read the same would be within the discretion of the trial judge. (p. 756).

Error to Circuit Court, Tucker County.

Action by W. C. Bond against National Fire Insurance Company. Judgment for plaintiff, and defendant brings error.

*Reversed, and remanded for new trial.*

*Cunningham & Stallings* and *W. K. Pritt*, for plaintiff in error.

*D. E. Cuppett* and *C. O. Strieby*, for defendants in error.

MASON, JUDGE:

On the 2nd day of June, 1912, the defendant, the National Fire Insurance Co. of Hartford, Conn., issued to the plaintiff, W. C. Bond, an insurance policy, insuring for one year a certain saw mill, and machinery, and certain engines, boilers and other property therein, and also a certain stock of lumber

situated in the yard of said saw mill building. The sum of $500.00 was placed on said building, machinery, etc., and $1,500.00 on the stock of lumber.

On the 6th day of December, 1912, a fire occurred, destroying some of the lumber insured; and the next night, December 7th, another fire occurred, destroying all of the remainder of said property.

After unsuccessful efforts to settle, the plaintiff instituted this suit in the circuit court of Tucker County on said policy. The declaration is in the statutory form. The defendant pleaded non-assumpsit, and filed with the plea several statements of defense. The plaintiff replied generally to defendant's statements of defense, and also filed a special replication to these defenses. Issue was joined on the plea of non-assumpsit, defendant's specifications of defense, and replication thereto, and plaintiff's special replication and defendant's reply thereto.

The defendant's statements of defense alleged the violation of the following conditions of the policy sued upon; namely:

"(a)   Company not liable beyond the actual cash value of the property.

"(b)   Entire policy void if the insured concealed or misrepesented in writing or otherwise any material fact or circumstance concerning the insurance or the subject thereof; fraud and false swearing.

"(c)   Neglect of insured to use all reasonable means to save and preserve the property before and after fire or when endangered by fire.

"(d)   No suit maintainable until after full compliance.

"(e)   Fraudulent inventory, violation of the 'Iron Safe Clause.'

"(f)   Not a true set of books kept, so as to clearly and plainly present a record of the business, purchases, sales, and shipments; a violation of 'Iron Safe Clause'.

"(g)   Subsequent contracts of insurance.

"(h)   Ceasing to operate the mill more than 30 days without permission of the insurer."

The defendant contends that these are violations of the promissory covenants of the policy, and that the burden of proving compliance with these covenants is upon the plaintiff.

Plaintiff's special replication is as follows: ''The defendant will take notice that by way of special replication to the defendant's statements of defense filed in this action, wherein defendant denies liability on the policy sued on, here states that the plaintiff had Col. W. E. Crooks to give immediate notice in writing to this defendant to this plaintiff's said loss by fire in the declaration mentioned and that said defendant acted upon said notice by sending one Arthur Lohmyer to make personal inspection of the grounds on which the saw mill and lumber yard was, and ruins caused by said fire, and the circumstances surrounding the same, which said Arthur Lohmyer did, on the .... day of December, 1912, and the said defendant on or about the .... day of January, 1913, proceeded to and did adjust the said loss with the plaintiff whereby it agreed to pay the sum of $........ in discharge of its obligation under the terms of said policy, which said sum the plaintiff agreed to accept in satisfaction of said liability, but the payment whereof, the said defendant hath failed and refused to make, though often requested so to do. And so the plaintiff says that he ought not to be precluded from recovering judgment upon the said policy by reason of the matters and things heretofore pleaded by said defendant in avoidance of said policy.''

The defendant tendered the following rejoinder to the plaintiff's replication, No. 1, to-wit: ''By way of rejoinder to the plaintiff's Special Replication filed herein, the defendant says that it is not bound by the alleged adjustment or its alleged agreement to pay such adjustment for the facts and reasons stated in its statements of defense filed herein, none of which facts and reasons stated and alleged in its said statements of defense were known by the defendant at the alleged dates of said alleged adjustment. And this the defendant is ready to verify.''

The court refused to permit this rejoinder to be filed, and the defendant tendered the following rejoinder, No. 2, to-wit: ''This defendant for rejoinder to the special Replication herein, says that the amount of the alleged loss occasioned by the fire as claimed by plaintiff was adjusted but such adjustment was obtained by fraudulent misrepresentations and the concealments of material facts on the part of the plaintiff

and which were unknown to defendant at the time as specified in the Statements and Amended Statements of Defense filed herein, and said adjustment.'' This was permitted to be filed, to which the plaintiff replied generally.

Thereupon a jury was empaneled to try the case upon the issues joined; that is to say, upon the issue of non-assumpsit, defendant's statements of defense, and plaintiff's general and special replications thereto, and defendant's rejoinder No. 2 to the plaintiff's special replication.

Upon the trial the plaintiff put in evidence the said policy, proved the loss by fire of the property insured, and offered proof tending to show the value of the property destroyed; that he did not conceal or misrepresent any material fact or circumstance concerning the insurance; that he did use reasonable means to save and preserve the property, both before and after the fire; that he complied with the iron safe clause; and that the mill was operated up to within 30 days before the fire. In support of his special replication plaintiff offered evidence to prove that the fires occurred December 6, and 7, 1912, and that on the .... day of December, 1912, the plaintiff met Benj. Horkheimer, representing the defendant, and two agents, representing the other insurance companies, at Keyser, for the purpose of preparing proof of and adjusting the loss; that a formal proof of loss was agreed upon, showing that after apportioning the total loss among the different policies, there was due upon this policy the sum of $1,960.95; and that Horkheimer promised that the defendant would pay that amount of $1,960.95. The plaintiff insists that this sum was agreed upon by Horkheimer, the adjuster for the defendant, and that Horkheimer promised that the insurance company would pay this amount to plaintiff. Much of plaintiff's testimony relates to what took place at Keyser in this effort to reach a settlement.

The defendant offered testimony in support of its statements of defense, and denied that there was any promise to pay $1,960.95, as claimed by plaintiff, or any part thereof. Horkheimer says he made up the proof of loss from such information as he had; that he had no authority to make promises or agreements on the part of the defendant to pay anything, and did not do so. The defendant also offered

evidence to show that before the transactions at Keyser were had, the plaintiff had violated certain conditions of the policy of which the defendant then had no knowledge or information; that the defendant afterwards learned these facts, and declined to pay anything; that the adjustment made by its adjuster, Mr. Horkheimer, at Keyser, was procured by fraud and concealment on the part of the plaintiff.

The defendant assigns as error the refusal of the court to consolidate this suit with three other suits brought by the plaintiff against the same defendant at the same time, on three other policies issued by this defendant for insurance on the same property, to which the defenses would be the same. From this statement it would appear that these suits should have been consolidated, but this is a mere statement made by the defendant. The records of the other cases are not before us. Doubtless the circuit court who examined all the cases had sufficient reason for not entering an order of consolidation. This was a matter addressed to the sound discretion of the circuit court. The defendant was not entitled, as a matter of right, to have these cases consolidated. *Beach* v. *Woodyard,* 5 W. Va. 231; *Wyatt* v. *Thompson,* 10 W. Va. 645; *McKittrick* v. *McKittrick,* 43 W. Va. 117.

Upon the trial of the case the defendant asked to have the jury view the premises where the fire occurred, which the court refused. This assignment of error is not pressed in argument. This was a matter, in cases of this kind, within the discretion of the court. *Gunn* v. *Ohio River Railroad Co.,* 36 W. Va. 165; *Davis* v. *Telephone Co.,* 53 W. Va. 616.

After all the evidence had been submitted, the defendant asked the court to give the following instruction: "The court instructs the jury that upon the state and condition of the pleadings presented in this case the plaintiff is not entitled to recover and therefore the jury shall return a verdict for the defendant." The court refused to give this instruction, and the defendant excepted. We are of opinion that the testimony in the case would not justify the court in withdrawing the case from the jury, and a binding instruction of this kind would have that effect. Therefore, the court did not err in refusing to direct a verdict for the defendant.

The plaintiff asked the court to give twenty-seven instruc-

tions. Ten of these instructions were refused. No exceptions were taken to those refused, and the record does not show what these instructions were. Seventeen instructions were given for the plaintiff over the objections of the defendant. They are made part of the record by bill of exceptions. They are as follows:

"Plaintiff's instruction No. 2.    The court instructs the jury that if they believe from the evidence that the defendant insurance company, through its state agents knew or had reason to believe that any of the conditions of its policy of insurance had been violated and after such knowledge and belief sent its adjusters to adjust the loss of this plaintiff, and that such loss was adjusted, then by such adjustment, the defendant waived the conditions of its policy, and if you further believe from the evidence that the adjuster promised to pay the plaintiff the sum of $1960.95, after said adjustment, then in that case you should find for the plaintiff in the sum of $1960.95.

"Plaintiff's Instruction No. 3.    The court instructs the jury that if they believe from the evidence that the defendant sent its representative to Keyser, W. Va., and that the plaintiff met said representative there, and that they adjusted the loss sustained under the policy herein sued on at the sum of $1960.95, and that the said adjustment was made on the 19th day of December, 1912, then the jury must find a verdict for the plaintiff for the sum of $1960.95, with interest thereon from the 18th day of February, 1913, unless the jury should further believe that the defendant has proven by a preponderance of the evidence that the said adjustment was procured by fraud.

"Plaintiff's Instruction No. 4.    The court instructs the jury that if they should reach the conclusion from the evidence that there is a variance between the provisions of the body of the policy in evidence in this case and the slip thereto attached, that in such event the provisions contained in the slip attached thereto will take precedence over those contained in the body of such policy.

"Plaintiff's Instruction No. 5.    The court instructs the jury that if they believe from the evidence that a proof of loss was furnished the defendant insurance company on the 19th day

of December, 1912, and that said proof of loss was retained by the defendant insurance company, and no defects were pointed out to the insured after such proof of loss, then such failure to point out, is a waiver of such defects, if any there are, as the law requires that defects in a proof of loss shall be specified.

"Plaintiff's Instruction No. 6. The court instructs the jury that if they believe from the evidence that the plaintiff failed to perform the duty to save and preserve property covered by the policy of insurance, that such failure does not of itself cause a forfeiture of the policy, the consequences is that the insured cannot recover to the extent of the loss or damage caused by his neglect to use all reasonable means to save and preserve it, but in establishing such a defense the burden rests upon the insurance company: and the court further instructs the jury that such duty to preserve and save does not exist unless in the power of insured to act in saving or preserving.

"Plaintiff's Instruction No. 7. The court instructs the jury that if they believe from the evidence that the storage house, wherein was saws, wire cable, pulleys, bolter, etc., and that said building was situated at a distance of one hundred and fifty from the mill building, and further believe from the evidence that it was not an addition to said mill building, and that there was no communcation between said mill building and the storage house except over the tracks, switch or spur of the Western Maryland Railroad, and the same was not used by the plaintiff as part of the property insured, then that property, such as saws, wire cable, pulleys, bolter, etc., in said building were not covered by the policy of insurance.

"Plaintiff's Instruction No. 8. The court instructs the jury that if they believe from the evidence in this case that the policy of insurance of the defendant insurance company was issued and delivered to the plaintiff by the defendant as its agent, and at the time the said company or its agent had knowledge of the existence of other insurance on the same property then the defendant is estopped from claiming a forfeiture on the grounds that other insurance was so issued, and under such circumstances the policy in question can

not be voided by the plea that other insurance exists on the property covered by the policy in question.

"Plaintiff's Instruction No. 9.  The court instructs the jury that if they believe from the evidence that the plaintiff, and the adjuster for the defendant insurance company met at Keyser, West Virginia, on the 19th day of December, 1912, by reason of an agreement to meet on that date to adjust the loss of this plaintiff, and further believe from the evidence that they did meet and did adjust the loss covered by the policy of insurance in this case, as per the amount set out in the proof of loss, and upon the adjustment thereof, amounting to $1960.95, and that the defendant promised to pay such loss, then the jury must find for the plaintiff the said amount with interest from the 19th day of February, 1913, unless the said defendant insurance company shall prove by a preponderance of the evidence that said adjustment was procured through fraud.

"Plaintiff's Instruction No. 11.  The court instructs the jury that if they believe from the evidence that a fire occurred on the premises of assured at Bond's Siding on the sixth day of December, 1912, and that on the next day, the plaintiff notified the defendant insurance company through its local agent at Keyser, West Virginia, of the loss or damage, and further believe from the evidence that on the night of the seventh day of December, 1912, or on the morning of the 8th that another fire occurred, which destroyed the entire plant, and that the plaintiff notified the defendant insurance company the same day by letter through its local agent at Keyser, West Virginia, and further believe from the evidence, that the said local agent notified the said defendant insurance company through its local agent of the total destruction of said insured saw mill and lumber, and that said "locan" (local agent) transmitted the notice, to the State agents of the said defendant insurance company, and that in pursuance of said notice of loss, that the defendant sent or caused to be sent its adjuster, to adjust such loss if any, and that an adjustment was made, then you are instructed that such notice of loss is sufficient, as required by the policy of insurance.

"Plaintiff's Instruction No. 14.  The court instructs the jury that if they believe from the evidence that the boiler,

engine, pulleys, belting, lathmill and saw mill in question were not in operation at the time the policy sued on was issued, and that the agent of the defendant company who took the application and issued the policy knew this at the time, then said defendant cannot defend this suit by alleging a breach of the condition of the policy requiring said mill to operate.

"Plaintiff's Instruction No. 16. The court instructs the jury that if they believe from the evidence that the engine, boiler, stacks, saws, pulleys, belting and other property or any part of it was so damaged by fire as to render it useless for the purpose for which the property had been used, then that is a destruction in the meaning of the law.

"Plaintiff's Instruction No. 20. The court instructs the jury that if they believe from the evidence that the plaintiff requested the defendant insurance company through its local agent, to keep his lumber yard and machinery insured, and further believe from the evidence that in pursuance of such request that the defendant through its local agent at Keyser, West Virginia, went upon the ground and viewed the said lumber yard, and appraised and estimated the amount of said lumber, and viewed and inspected said saw mill with its appurtenances and placed the value upon said lumber and saw mill, and further believe that a policy of insurance was issued by the defendant company to the plaintiff, and that the assured was induced to pay the premium of insurance upon said policy, then the defendant is estopped from claiming that there was any misrepresentation as to the amount, value and quality of lumber, and as to the value, and condition of the saw mill at the time the property was insured.

"Plaintiff's Instruction No. 21. The court instructs the jury that if they believe from the evidence that any one of the many things required to be done in operating a saw mill ceased to be performed after the issuing of the policy sued on yet the fact of itself does not void the policy, and that in the meaning of the law operation means any act necessary to close out the business of the operation.

"Plaintiff's Instruction No. 23. The court instructs the jury that in this case if there is any doubt as to whether or not the plaintiff complied with the terms and conditions con-

tained in the policy sued on then in constructing said terms and conditions alleged and pleaded to have been violated that such terms and conditions shall be construed more favorably in favor of the plaintiff than the defendant.

"Plaintiff's Instruction No. 24. The court instructs the jury that in this case where the defendant seeks to avoid liability on its policy issued to the plaintiff on the grounds of fraud or misrepresentation on the part of the plaintiff, that the duty rests upon the defendant to show by a preponderance of the evidence that such fraud was practiced upon it by the plaintiff, knowingly and wilfully, and that such fraud or misrepresentation, if any, was as to a material fact or matter and was relied upon by the defendant and was the cause that moved it to make the adjustment pleaded, and unless as this has been proven the defendant cannot defeat a recovery of the plaintiff on such grounds.

"Plaintiff's Instruction No. 25. The court instructs the jury that if they believe from evidence in this case that the defendant issued to the plaintiff the policy of insurance sued on and that said policy made it mandatory upon the plaintiff to carry other insurance and that defendant afterwards issued to the plaintiff other insurance on the same property, then the defendant cannot show as a defense that such other insurance was issued in order to defeat a recovery by this plaintiff.

"Plaintiff's Instruction No. 26. The court instructs the jury that if they believe from the evidence in this case that the plaintiff kept a book or set of books either in an iron safe or in any other safe place other than the premises burned, which book or books contained a correct record of the lumber manufactured and shipped and that said book or books was presented to the agent of the defendant and no other book or books were asked for by said agent and that in pursuance of an inspection of said book or books an adjustment was made with the plaintiff, and that said adjustment was effected without fraud knowingly and wilfully being practiced upon the defendant, and the plaintiff had an inventory taken of said lumber either twelve calendar months before said policy of insurance was issued or within thirty days after it was issued, then the iron safe clause or condition of said policy

was complied with and a recovery by the plaintiff cannot be defeated on that ground.''

The defendant insists that these instructions are erroneous. We perceive no objection to Nos. 4, 6, 7, 11, 16, 24 and 26. The instructions most objectionable are Nos. 2, 3, 5, 8, 9, 14, 20, 21, 23 and 25. Nos. 2, 3, and 9 are bad for practically the same reasons, as will be referred to later. No. 5 is correct as an abstract proposition of law, but is erroneous here because it has no application to any issue in the case. No. 8 is erroneous because it is not founded on the evidence. There is no evidence that at the time the policy was issued there were any other policies outstanding on the saw mill property. Other policies were issued after this one. No. 14 is bad for the reason that it tells the jury that the mill was not in operation when the policy was issued, and that the agent of the company who issued the policy knew this when the policy was issued, and that the company cannot defend this suit alleging a breach of the conditions of the policy requiring the mill to be operated. It cannot be said that because the mill was not in operation at the time the policy was issued, the defendant waived the clause requiring it to be thereafter operated; especially in the face of a covenant clearly expressed in the policy that ''this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, if * * * it (the mill) cease to operate more than ten consecutive days.'' In this case the time had been increased to thirty days.

Instruction No. 20 is erroneous because it refers to facts not in dispute in the case. It tells the jury that if they believe from the evidence that the defendant by its agent, at the request of the plaintiff, went upon the ground and viewed the lumber yard and appraised and estimated the amount of lumber and the saw mill, etc., and issued the policy, and the plaintiff was induced to pay the premium of insurance upon the policy, then the defendant is estopped from claiming that there was any misrepresentation of the amount, value, and quality of the lumber, and as to the value and condition of the saw mill *at the time the property was insured.* This directs the jury to facts not in issue; namely, the value of the property at the time the policy was issued. There is no dispute as to the value of the property at the time of

the issuance of the policy.   The defendant's statements of
defense raise the question as to the value of the property at
the time of the fire only.   An instruction should not be given
upon a question not embraced in the pleadings and proof.
*Forney* v. *Ferrell*, 4 W. Va. 729; *Burr* v. *Brown*, 5 W. Va.
241; *Henry* v. *Davis*, 7 W. Va. 715.

Instruction No 21 is bad because it makes an erroneous
construction of the meaning of the word "operations" as
applied to the mill.   No. 23 is bad because it submits to the
jury the interpretation and construction of a written contract.
It is the duty of the court to construe and instruct the jury
as to the legal effect of all written instruments which are
the subject of controversy, and basis of the suit.   *Norwich
Lock Mfg. Co.* v. *Hockaday*, 89 Va. 557.   "As a general rule
the construction of all written documents given in evidence
belongs to the court exclusively."   *Washington Southern Ry.
Co.* v. *Lacey*, 94 Va. 460.   *Johnson* v. *Jennings*, 10 Grat. 1.
*State* v. *Emblem*, 44 W. Va. 521.   The learned counsel for
the plaintiff are correct in their contention as to the interpre-
tation to be given to policies of insurance, but constructions
and interpretations of this character are questions of law
to be decided by the court.   No. 25 is bad because it is not
founded upon any facts.   The policy does not make it manda-
tory upon the plaintiff to carry other insurance.   The instruc-
tion misconceives the language of the policy.

Instructions Nos. 2, 3, and 9, are the ones most radically
defective.   Instruction No. 2 tells the jury that if they believe
from the evidence that after the fire the defendant sent its
adjuster to adjust the loss and that the loss was adjusted,
and that when the defendant sent the adjuster to adjust the
loss, its officers knew or had reason to believe that any of
the conditions of the policy had been violated, the defendant
waived the conditions of its policy, and if the adjuster prom-
ised, after said adjustment, to pay the plaintiff the sum of
$1960.95, then the jury should find for plaintiff the sum
of $1960.95.   There are at least two substantial objections
to this instruction.   First, it does not follow that because
defendant knew of one violation of the conditions of the policy,
and was willing to pay notwithstanding such violation, that it
thereby waived other violations of which it had no knowledge.

The policy contains many promissory covenants which the assured must keep and perform or forfeit the policy. The insurer might be willing to waive some covenants and not others, and certainly the fact that the company waived one covenant is not evidence of the waiver of the violation of other covenants, wholly unknown to the company at the time. In the absence of fraud or actual notice, waiver can only be effected in the manner provided in the policy.

Second, the instruction says to the jury that if they believe from the evidence that the adjuster promised to pay to the plaintiff the sum of $1960.95 after the adjustment, then the jury shall find for the plaintiff the sum of $1960.95. This is erroneous for the reason that it assumes in the absence of proof and contrary to the proof, that the adjuster had the authority to make the promise on behalf of the defendant. The only proof as to the authority of the adjuster, Benj. Horkheimer, is what is said by him. In his deposition he says the authority given to him was to ascertain the loss and damages and the sound value of the property; that he had no authority to settle. There is conflict of testimony as to whether Horkheimer promised to pay, but none as to his authority to make the promise. He says that the liability and the question of payment was left to the executive officers of the company. The instruction proceeds on the theory that because Horkheimer was the insurance company's adjuster, that as such, he had the authority not only to make proof of loss and ascertain the amount of the loss, but also to make an agreement binding the company to pay. This is an erroneous notion of the authority and duties of an adjuster for an insurance company. The word "adjuster" as applied to insurance companies has a well understood meaning. "Adjuster—one who determines the amount of a claim." 1 Cyc. 795. "Adjusters, appraisers, medical examiners, and attorneys are strictly special agents, whose authority to bind the company is narrowly confined to acts incident to the discharge of the special functions for which they are employed." Vance on Insurance, 316. "An adjuster is one who determines the amount of a claim, as a claim against an insurance company." 1 Words and Phrases, 195.

The following are well settled rules respecting the appoint-

ment, duties and authority of adjusters for insurance companies:

First; An adjuster is a special agent for the person or company for whom he acts. His powers and authority are prima facie coextensive with the business intrusted to his care.

Second; An insurance adjuster is ordinarily a special agent of limited authority to ascertain and adjust the loss, having no power merely as such in the absence of some evidence as to his authority to alter the contract, or waive any of its essential conditions (i. e. those outside the apparent scope of his authority to ascertain and adjust the loss).

Third; An adjustment of the amount of the loss, and an agreement to pay the amount as adjusted are two distinct and independent things; while the latter agreement may be made by the company or an adjuster having authority, and enforced as a new agreement, independent of the policy, and need not be in writing, such agreement should be established by clear, positive, and convincing evidence.

Fourth; A mere adjustment of a loss, unless such adjustment is accepted by the insurance company with a promise to pay, will not estop the insurer from denying his liability. It is a mere step to ascertain and fix the amount of the loss. The adjustment does not fix the liability in and of itself without promise of payment. *Colby* v. *Parkersburg Insurance Co.*, 37 W. Va. 789.

"The fact that the loss has been adjusted by the insurers, does not necessarily entitle the assured to recover the amount. The adjustment, of itself, merely amounts to an admission on the part of the insurer that the sum fixed, is due, *if the insured is to have anything under the policy,* and does not stop the insurer from setting up fraud on the part of the assured, or a breach of any of the conditions of the policy that operate to defeat the insurer's liability." Wood on Insurance, sec. 456. As additional authorities to the foregoing rules, reference is made to 1 Clement on Fire Insurance, pp. 45, 46, 48, and the authorities therein referred to.

By an application of the above principles of law to the facts in this case, the defects in instructions Nos. 2, 3, and 9, will be apparent. It will be seen that Horkheimer was an

adjuster, with no authority beyond that of an adjuster, and as such could bind the insurance company for anything done by him within the apparent scope of his authority.    His authority as an adjuster was limited to ascertaining the amount which the insured is entitled to have, if anything. A formal proof of loss, or adjustment, does not amount of itself to a promise on the part of the company to make payment.    It is in proof and not denied that Horkheimer, acting with the adjusters for the other companies, made and agreed upon a proof of loss, and that this proof of loss was delivered by Horkheimer to the defendant.    Usually and very naturally the first step to be taken in the settlement of a loss by fire, of the property covered by the policy of insurance, is to determine the amount of the loss.    As we have already seen, the actual loss sustained by the insured and the liability of the insurer for that loss are quite different things.    The loss will be measured by the value of the property destroyed by fire, covered by the policy, and yet there may be no liability on the part of the insurer, for obvious reasons.    This will depend largely on the contract of the parties as expressed in the policy, and the observance or breach of the covenants and conditions of the contract.    When the adjustment, or proof of loss, is agreed upon, the first step in the settlement is accomplished, and in the absence of mistake, fraud, or misrepresentation, it must stand as the amount to be paid, if anything, but this will not estop the insurer from denying its liability for the loss.    The amount of loss will thus be fixed, but not the liability of the insurer.    But it is said by the plaintiff that the company promised to pay the amount agreed upon as the loss.    The only evidence of this is the alleged promise of Horkheimer; to which it is replied that Horkheimer was not authorized to make the promise, and it does not appear that if he made it (which he denies), that it was ratified by the defendant.

We, therefore, conclude that instruction No. 2 is bad, because it assumes that the adjuster as such, without proof of any other authority, could make a promise on the part of the company, binding it to make payment of the amount agreed upon by the adjustment.    Instruction No. 3 is erroneous because it assumes as a matter of law that proof of

an adjustment alone, unless procured by fraud, entitled the plaintiff to recover.  This is a violation of the rule of this court as stated in *Colby* v. *Parkersburg Insurance Co., supra,* namely, that "a mere adjustment of the loss unless accepted by the company with a promise of payment according to it will not estop the insurance company from denying its liability," and for reasons already expressed.  Instruction No. 9 is bad for reasons stated in conclusion of Nos. 2 and 3.

The defendant asked for eighteen instructions.  Nos. 1, 2, 3, 4, and 15 were refused, and the other thirteen were given. We have already referred to instruction No. 1, asking the court to instruct the jury to return a verdict for the defendant.   No. 2 was of like import, and both were properly refused.

Defendant's instruction No. 3 is as follows.  "The court instructs the jury that the evidence upon the part of the plaintiff is insufficient to prove that the machinery in the saw mill of the plaintiff was not idle or not operated for a period longer than that permitted by the provision of the policy, and within the life of the policy, therefore the plaintiff cannot recover any part of that item of insurance on the machinery contained in said mill."  This instruction is so worded as very easily to mislead.  It asks the court to say to the jury that the evidence is insufficient to prove that the machinery in the saw mill was *not* idle and not operated for a period longer than that permitted by the provisions of the policy, within the life of the policy, and therefore the plaintiff cannot recover anything for the machinery.  The evidence in regard to this is contradictory.  This was for the jury to decide.  But if the instruction were correct, the error in refusing to give it is cured by the following instruction No. 13, given at the instance of the defendant:  "The court instructs the jury that if they believe from the evidence in this case that the plaintiff ceased the operation of his lumber plant which was insured for a period longer than that permitted by the provision of the policy, and within the life of the policy, then the plaintiff cannot recover any part of that item of insurance on the machinery contained in said mill."

Defendant's instruction No. 4 is as follows:  "The court

instructs the jury that in order that the plaintiff prevail in this case, the burden is upon him to show by a preponderance of the testimony that he has fully complied with all the conditions and warranties of the policy alleged to have been violated, and if the jury believe from the evidence that the plaintiff has not preponderated in the evidence in that regard, then he is not entitled to recover, and the verdict of the jury should be for the defendant.'' This instruction to be correct should have been limited to promissory warranties named in the defendant's statements of defense. In addition to this, instructions Nos. 5, 6, and 7, given at the instance of the defendant, fully cover the questions referred to in instruction No. 4.

Defendant's instruction No. 15 is as follows: ''The court instructs the jury that the policy of insurance in the case sued upon contains a provision that this company shall not be liable for loss caused 'by the neglect of the insured to use of all reasonable means to save and preserve the property at and after a fire or when the property is endangered by fire in the neighboring premises'; therefore even though the jury may believe from the evidence that the insured property caught fire through no fault of the insured, and the insured when he could thereafter have had the fire extinguished by the exercise of ordinary diligence, fraudulently contrived or allowed said property to be destroyed by fire, or fraudulently desisted from the exercise of ordinary diligence to save said property, the plaintiff cannot recover, and the jury should find for the defendant; and such negligence, if the jury believe there was such negligence on the part of the agent of the insured, is attributable to the principal.'' We do not think there was sufficient evidence to justify this instruction. The plaintiff was not present when either of the fires occurred, nor does it appear from the evidence that he was guilty of any negligence or wrong in regard to the fire, or in preserving any of the property. The defendant has no cause of complaint on account of the instructions asked for by it and refused.

The plaintiff's special replication is erroneous. It proceeds on the theory that an adjustment imports a promise to pay. Having averred that the loss was adjusted, it alleges

that ''whereby the plaintiff agreed to pay,'' etc.  The legal effect of an adjustment has been discussed fully in other parts of this opinion, and it is unnecessary to repeat it here.

We are of opinion that the evidence shows substantial compliance on the part of the plaintiff with the ''Iron Safe'' clause in the policy, and that the court did not err in permitting the books and papers offered by the plaintiff in support of the same to go into evidence, and did not err in overruling the defendant's motion to exclude Book No. 2.

W. J. Cramer, a witness for the plaintiff, testified that he made the inventories of the lumber which was destroyed by the fire, and that he wrote both inventories in the books, and that he did the writing in Book No. 1.  Counsel for the defendant, with a view of testing the accuracy of this statement, asked the witness to write the words ''Lumber shipped from Bond Siding'' on a pad or tablet offered him.  The plaintiff objected, and the court sustained the objection, and defendant excepted.  This exception is not saved by bill of exceptions, or referred to in appellant's petition for writ of error, but the objection was made at the trial and overruled, and exception by the defendant noted.  There was a motion for a new trial, and a stenographic report of the evidence made part of the record, which shows the objection to the question and the ruling of the court, and that the ruling was excepted to; and the particular question and ruling complained of are specified distinctly in the brief of counsel, upon the hearing of the case upon writ of error; so that this court can readily and safely find the particular question and ruling to which the exceptions relate.  In such case this court will consider the matters excepted to, though there be no formal bill of exceptions thereto.  *Kay* v. *Glade Creek & Raleigh Railroad Co.*, 47 W. Va. 467; *Foley* v. *City of Huntington*, 51 W. Va. 369.  It must be borne in mind that Cramer was not being examined as an expert.  He had testified as to the correctness of the book offered in evidence as a book of original entry, and sworn that the writing in the book was done by him.  The correctness of the book was in dispute. The defendant sought by this cross-examination to discredit this witness by comparison of the handwriting in the book with the specimen of his handwriting to be secured in this

way.  The defendant, of course, had the right to contradict the witness in this particular.  But we are of opinion that the defendant could not as a matter of right compel the witness to make the experiment at the trial.  The law seems to be that "in the discretion of the judge, experiments may be tried in the presence of the jury either in or out of court, the result of which they may use as evidence."  17 Cyc. 294. We think this a matter of sound discretion with the trial judge.  No doubt in the case at bar the judge had sufficient reasons for not stopping the trial at this point to enable the defendant on cross-examination of a witness to prepare evidence to be afterwards submitted to the jury.

It is also contended by the defendant that the court erred in not prohibiting one of the counsel for plaintiff from reading to the jury in his argument the act of the Legislature in relation to assessments to be made against fire insurance companies, out of which salaries of fire marshals, deputy fire marshals, and other expenses of the fire department of the state are to be paid—Acts 1911, ch. 37, sec. 16.  E. L. Rudman, a deputy state fire marshal, was examined as a witness for the defendant.  The statute read by counsel referred only to the manner of raising money for the maintenance of the fire department of the state and did not affect the merits of the case.  It does not appear that the defendant was injured in any manner by the counsel referring to a fact, in evidence, or reading the statute showing how the money was raised out of which the deputy was paid.  This was clearly within the discretion of the judge trying the case.

For the foregoing reasons, the judgment of the circuit court will be reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed, and remanded for new trial.*